## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FOREIGN SERVICE ASSOCIATION, 2101 E Street, NW Washington, D.C. 20037, | |
| *Plaintiff*, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States 1600 Pennsylvania Avenue, NW Washington, DC 20500, | Case No. 1:25-cv-1030 |
| OFFICE OF PERSONNEL MANAGEMENT, 1900 E Street, NW Washington, D.C. 20415, | |
| U.S. DEPARTMENT OF STATE, 2201 C Street, NW Washington, D.C. 20520 | |
| U.S. AGENCY FOR INTERNATIONAL DEVELOPMENT, 2201 C Street, NW Washington, D.C. 20520 | |
| MARCO RUBIO, in his official capacity as Secretary of State and Acting Administrator, United States Agency for International Development 2201 C Street NW Washington, D.C. 20520 | |
| CHARLES EZELL, in his official capacity as Acting Director, Office of Personnel Management, 1900 E Street, NW Washington, D.C. 20415, | |
| *Defendants.* | |

**Introduction**

1. In 1971, President Nixon issued an Executive Order granting collective bargaining rights to members of the Foreign Service because "the effective participation by the men and women of the Foreign Service in the formation of personnel policies and procedures affecting the conditions of their employment is essential to the efficient administration of the Foreign Service." In 1980 Congress enacted the Foreign Service Labor-Management Relations Statute to guarantee those rights in law. Through ten presidencies, our Secretaries of State have recognized and bargained with the American Foreign Service Association ("AFSA"). This bargaining has occurred during the Viet Nam War, the Cold War and the fall of the Soviet Union, 9/11 and the War on Terror, as well as during the war in Afghanistan, the longest war the United States has ever fought. Even though America is at peace, President Trump has now issued an executive order illegally terminating the Foreign Service's statutory collective bargaining rights, ostensibly because, somehow, they are no longer "consistent with national security requirements and considerations." This lawsuit seeks to set aside and enjoin this *ultra vires* action because the scope of the termination of collective bargaining rights is not authorized by the Foreign Service Labor-Management Relations Statute, and because the President terminated AFSA's collective bargaining rights not for national security reasons, but in retaliation for AFSA's opposition to the President's other attacks on the Foreign Service.

**Jurisdiction, Venue and Parties**

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the action arises under federal law, including the United States Constitution.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because the Plaintiff's headquarters is located in the District of Columbia and therefore resides here, because the

Defendants reside here, and because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in Washington, D.C. because the Executive Order was issued here.

4.  Plaintiff AFSA was founded in 1924 as a professional association and advocate for the Members of the United States Foreign Service. AFSA has been certified by the Foreign Service Labor Relations Board as the exclusive representative of approximately 18,000 active duty members of the Foreign Service employed by the Department of State and the U.S. Agency for International Development ("USAID"), as well as the Foreign Commercial Service ("FCS") in the Department of Commerce, Foreign Agricultural Service ("AFS"), Animal and Plant Health Inspection Service ("APHIS") in the Department of Agriculture, and U.S. Agency for Global Media ("USAGM").

5.  The Defendant Donald J. Trump is the President of the United States and is being sued in his official capacity. In that capacity, he issued the Executive Order.

6.  The Office of Personnel Management ("OPM") is a federal agency headquartered in Washington, D.C.

7.  The U.S. Department of State ("State") is a federal agency headquartered in Washington, D.C. The President's Executive Order purports to exclude State from the Foreign Service Act's labor-management provisions pursuant to 22 U.S.C. § 4103(b).

8.  The U.S. Agency for International Development ("USAID") is a federal agency headquartered in Washington, D.C. The President's Executive Order purports to exclude USAID from the Foreign Service Act's labor-management provisions pursuant to 22 U.S.C. § 4103(b).

9.  The Defendant Marco Rubio is the Secretary of State as well as the Acting Director of USAID. He is sued in his official capacities.

10. The Defendant Charles Ezell is the Acting Director of the U.S. Office of Personnel Management. He is sued in his official capacity. In that capacity, Defendant Ezell issued a

memorandum to heads and acting heads of departments and agencies entitled "Guidance of Executive Order Exclusions from Federal Labor-Management Programs."

## Factual Allegations

11. In 1978, Congress enacted Chapter 71 of the Civil Service Reform Act, also known as the Federal Service Labor-Management Relations Statute (hereinafter "Chapter 71"), granting collective bargaining rights to most of the Federal civil service. But, because Congress found that "the unique conditions of Foreign Service employment require a distinct framework for the development and implementation of modern, constructive, and cooperative relationships between management officials and organizations representing members of the Service," in 1980 it enacted the Foreign Service Labor-Management Relations Statute ("FSLMRS"), 22 U.S.C. §§ 4101-4140, which is Chapter 10 of Title I of the Foreign Service Act of 1980.

12. The FSLMRS defines "employee," in relevant part, as "a member of the [Foreign] Service who is a citizen of the United States, wherever serving, other than a management official, a confidential employee, a consular agent, a member of the Service who is a United Citizen (other than a family member employed under section 3951 of this title, or any individual who participates in a strike in violation of section 7311 of title 5…." 22 U.S.C. § 4102(8)(A). "Employees" are commonly referred to as Foreign Service members.

13. The FSLMRS covers only Foreign Service members who are employed by the Department of State, the Broadcasting Board of Governors (now known as U.S. Agency for Global Media), USAID, and the Departments of Commerce and Agriculture, 22 U.S.C. § 4103.

14. Like Chapter 71, which governs much of the Executive Branch, the FSLMRS guarantees the rights of Foreign Service members to form, join, assist and serve as representatives of

a labor organization, and to engage in collective bargaining with respect to conditions of employment through a representative of their own choosing. 22 U.S.C. § 4104.

15. The FSLMRS provides that Foreign Service members of a covered Department or Agency shall constitute a single and separate worldwide bargaining unit, which excludes (a) "employees engaged in personnel work in other than a purely clerical capacity"; and (b) "employees engaged in criminal or national security investigations or who audit the work of individuals to ensure that their functions are discharged honestly and with integrity." 22 U.S.C. § 4112(1) & (2).

16. The FSLMRS provides that a labor organization who is the exclusive bargaining representative of a worldwide bargaining unit, such as AFSA, shall be the representative of all Foreign Service members in that unit, without regard to whether the Foreign Service members are members of that union. 22 U.S.C. § 4113(a).

17. Foreign Service members who voluntarily choose to join AFSA pay membership dues; if a bargaining unit employee so chooses and provides a written authorization to do so, agencies are required to deduct membership dues from an employees' pay and transmit those dues to the labor organization. 22 U.S.C. § 4118(a).

18. The FSLMRS requires the labor organization, *e.g.*, AFSA, and the Department or Agency, *e.g.*, State or USAID, to meet and negotiate in good faith for purposes of arriving at a collective bargaining agreement, as well as to discuss and negotiate on any condition of employment. 22 U.S.C. §§ 4113(c), 4113(e)(1), 4113(e)(2), 4113(e)(3). The statute further requires the parties to execute a written document embodying any agreement resulting from their collective bargaining. 22 U.S.C. § 4113(6).

19. This statute establishes the three-member Foreign Service Labor Relations Board ("Board") which is chaired by the Chair of the Federal Labor Relations Authority. 22 U.S.C. § 4106.

The Board supervises elections to determine which labor organization shall represent Foreign Service members in each of the agencies covered by this statute and resolves unfair labor practice complaints and bargaining disputes. 22 U.S.C. § 4107.

20. This statute identifies unfair labor practices virtually identical to those in the Federal Service Labor Management Relations Statute, which are investigated and prosecuted by the General Counsel of the Federal Labor Relations Authority. 22 U.S.C. §§ 4108, 4115, 4116.

21. This statute defines the parties' obligations to bargain in good faith and establishes the Foreign Service Impasse Disputes Panel to resolve impasses that arise in bargaining. 22 U.S.C. §§ 4110, 4113(e). Importantly, this statute identifies an extensive listing of "management's rights," such as the right to determine the mission, budget, organization, and internal security practices of the agency, as well as the right to assign work, to make or not make promotions, to determine the number of employees and to conduct reductions in force and to take whatever actions may be necessary to carry out the mission of the Department during emergencies - all of which are off limits to bargaining, subject to exceptions for negotiating "procedures which management officials of the Department will observe in exercising" these functions or "appropriate arrangements for employees adversely affected by the exercise of" these functions. 22 U.S.C. § 4105.

22. Unresolved grievances over contract violations, known in this statute as "Implementation Disputes," are adjudicated by a Foreign Service Grievance Board, whose decisions can be appealed to the Foreign Service Labor Relations Board.

23. In 1973, AFSA was certified under Executive Order 11636 as the exclusive representative for Foreign Service members employed worldwide by the Department of State and, following a separate election by Foreign Service members at USAID, as their exclusive representative. AFSA has since negotiated "Framework Agreements" with the Department of State

6

and USAID governing their relationship under the authority of the Foreign Service Labor Management Relations Statute. These agreements include provisions that permit elected members of the Foreign Service to be "detailed" to AFSA. The elected AFSA President and Vice Presidents, on 100% official time, represent their fellow Foreign Service members in negotiations with their respective agency and in other representational activities. For the "efficient servicing of employees with the bargaining unit," the State Department and USAID agreements provide that AFSA will be given office space within the State Department and USAID headquarters, as well as access to the Department's registered mail, electronic mail and telecommunications systems for representational activities. Both agreements (as does the Foreign Service Labor Relations Statute itself) obligate the State Department and USAID to withhold AFSA dues from the bi-weekly paychecks of those members of the Foreign Service who voluntarily elect to pay dues in this manner.

24. In the four decades since the Foreign Service Labor Management Relations Statute was enacted and these agreements were negotiated, there has been just eight "Implementation Disputes" brought to the Foreign Service Labor Relations Board by AFSA. https://www.flra.gov/foreign-service-labor-relations-board-decisions (last visited April 4, 2025). As a testament to the constructive relationship between AFSA and the Department of State, in 2006, the Society of Federal Labor and Employee Relations Professionals awarded them its Labor-Management Cooperation Award, which is presented annually to the Federal agency and labor organization that exemplifies the goal of cooperative labor-management relations.

25. Immediately after his inauguration, the Defendant Trump began a wholesale attack on Foreign Service members and their work, which was vigorously, vocally and successfully opposed by AFSA.

26. On January 20, 2025 Defendant Trump issued an Executive Order titled "Reevaluating and Realigning United States Foreign Aid," directing an immediate "90-day pause in United States foreign development assistance for assessment of programmatic efficiencies and consistency with United States foreign policy." Defendant Rubio then directed the immediate issuance of stop-work orders on USAID foreign assistance awards. On January 26, 2025, at least fifty-six senior career agency staff, many of whom are Foreign Service members, were put on administrative leave. On February 3, USAID's headquarters were shut down. AFSA issued a press release "strongly object[ing] to the administration's decision to dismantle the United States Agency for International Development (USAID). This will undermine U.S. national security, may subvert Congressional authority, and demonstrates a lack of respect for the dedication of the development professionals who serve America's interests abroad."

27. The next day, Defendants Trump and Rubio ordered a shutdown of all overseas USAID missions and ordered thousands of USAID employees, including almost 1,400 Foreign Service members represented by AFSA, to be recalled. All Foreign Service members represented by AFSA and employed by USAID were placed on administrative leave effective February 7. On February 5, AFSA issued another press release calling the recall of the Foreign Service a "reckless move" that "weakens America's presence abroad" and "undermines national security amid rising global instability."

28. AFSA then filed suit in this Court along with another union that represents USAID employees alleging *inter alia*, that Defendant Trump's and Defendant Rubio's actions in dissolving USAID violated the separation of powers. *Amer. Foreign Serv. Assn. et al v. Trump.*, No. 1:25-cv-352 (CJN). On February 7, Judge Nichols issued a temporary restraining order against the administrative leave and recall.

29. On February 12, Defendant Trump issued Executive Order 14,211, "One Voice for America's Foreign Relations," directing Defendant Rubio to revamp the recruiting, performance, evaluation and retention standards for the Foreign Service to ensure their fealty to the President. According to the *New York Times*, "[t]his Executive Order challenges the basic and longstanding principles of the Foreign Service: that career diplomats should be hired based on their qualifications and expertise, not their political views, and that dissent should be welcomed and not punished." The *Times* quoted AFSA as saying that it would "always defend the integrity and nonpolitical nature of the Foreign Service so that our members can continue to serve the American people."

30. On February 22, AFSA issued another press release criticizing the Defendant Ezell's requirement that Foreign Service members and other civil servants be required to provide a weekly report to OPM of their accomplishments during the previous week in the form of "five bullets." "To disparage public servants by making them prove their value through this OPM email exercise does a disservice to them and to the country they love and work tirelessly to represent," the release stated. "We will not stand by while their careers are threatened. AFSA will vigorously oppose any unlawful effort to terminate or diminish the work and sacrifice of Foreign Service members," it concluded.

31. On March 11, AFSA issued another press release stating that it "is alarmed by reports that USAID has directed the destruction of classified and sensitive documents that may be relevant to ongoing litigation regarding the termination of USAID employees and the cessation of USAID grants."

32. On March 19, AFSA issued another press release criticizing the removal of Diversity, Equity, Inclusion, and Accessibility as factors in performance evaluation and promotion in the Foreign Service. The release noted that the use of these factors had been negotiated in good faith

between AFSA and the Department of State, and that "any changes to the tenure and promotion system must be subject to collective bargaining, as required by law."

33. On March 21, AFSA and others filed suit against the Administration in U.S. District Court in the Southern District of New York to enjoin the disbandment of the U.S. Agency for Global Media ("USAGM"), which employs 16 Foreign Service members represented by AFSA. On March 28, U.S. District Judge Oetken issued a temporary restraining order prohibiting "any further attempt to terminate, reduce-in-force, place on leave, or furlough any USAGM employee."

34. The Foreign Service Labor Management Relations Statute contains a provision that has never before been used by any of the seven Presidents who served since the statute was enacted (including the first term served by Defendant Trump). It provides:

> **(b)   Exclusion of subdivisions.** The President may by Executive order exclude any subdivision of the Department from coverage under this subchapter if the President determines that—
>
> **(1)**   the subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work, and
>
> **(2)**   the provisions of this subchapter cannot be applied to that subdivision in a manner consistent with national security requirements and considerations.

22 U.S.C. § 4103(b). Comparable, although not identical, language appears in Chapter 71 which allows the President to exclude not just "subdivisions" of agencies from collective bargaining under the statute, but entire agencies themselves. 5 U.S.C. § 7103(b).

35. On March 27, 2025, Defendant Trump issued Executive Order No. 14,251, *Exclusions from Federal Labor-Management Programs*, 90 Fed. Reg. 14553 (Mar. 27, 2025), which invoked § 4103(b) and terminated the collective bargaining rights of all the Foreign Service members employed by the Department of State and USAID. Although § 4103(b) permits the President to exclude certain

"subdivisions" of the Department of State and USAID from collective bargaining rights when he makes a *bona fide*, good faith determination that the Foreign Service Labor Management Relations Statute "cannot be applied to that subdivision in a manner consistent with national security requirements and considerations," the President subverted the plain language and intent of the statute by listing and excluding each and every subdivision in the Department of State and USAID that employs Foreign Service members.

36. President Trump's Executive Order strips collecting bargaining rights not only from Foreign Service members at the Department of State and USAID, but also from three-quarters of the federal employees who are currently represented by federal sector unions, demonstrating that it was not a targeted assessment based on national security concerns. *See* Hassan Ali Kanu, *Trump Moves to Strip Unionization Rights from Most Federal Workers*, Politico.com, available at https://www.politico.com/news/2025/03/28/union-rights-federal-workers-donald-trump-00257010(Mar. 28, 2025).

37. The White House issued a "fact sheet" simultaneously with the Executive Order in which it candidly admitted that the President's Executive Order was issued to curtail the power of and to punish those particular labor organizations who, like AFSA, have ostensibly "obstructed" the President's efforts to illegally dismantle the Federal government and to illegally dismiss large segments of the Federal workforce these labor organizations represent:

> President Trump is taking action to ensure that agencies vital to national security can execute their missions without delay and protect the American people. The President needs a responsive and accountable civil service to protect our national security. Certain Federal unions have declared war on President Trump's agenda.
>
> The largest Federal union describes itself as "fighting back" against Trump. It is widely filing grievances to block Trump policies.
>
> For example, VA's unions have filed 70 national and local grievances over President Trump's policies since the inauguration—an average of over one a day.

> Protecting America's national security is a core constitutional duty, and President Trump refuses to let union obstruction interfere with his efforts to protect Americans and our national interests.
>
> President Trump supports constructive partnerships with unions who work with him; he will not tolerate mass obstruction that jeopardizes his ability to manage agencies with vital national security missions.

*Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements,* https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-exempts-agencies-with-national-security-missions-from-federal-collective-bargaining-requirements/ (last visited April 1, 2025).

38.     Also on March 28, the Defendant Ezell issued a Memorandum to Heads and Acting Heads of Departments and Agencies instructing them to discontinue participation in ongoing and future grievance procedures, to disregard extant collective bargaining agreements, to prohibit union representatives from using "official time" authorized by statute and collective bargaining agreements for representational purposes, to terminate the unions' use of agency resources such as office space, and, in order to starve the unions of resources, to terminate employees' dues allotments that are also authorized by statute and collective bargaining agreements.  *Guidance on Executive Order Exclusions from Federal Labor-Management Programs*, https://www.opm.gov/policy-data-oversight/latest-memos/guidance-on-executive-order-exclusions-from-federal-labor-management-programs.pdf (last visited April 1, 2025).

39.     Pursuant to the Defendant Ezell's Guidance, on March 31 the Chief Labor Management Negotiator at the Department of State sent AFSA officers the following email shutting down AFSA's operations with immediate effect, including termination of dues allotments, official time, and an order to vacate the union's offices at the Department of State:

On Thursday, March 27, 2025, the President issued an Executive Order (EO), entitled "Exclusions from Federal Labor-Management Relations Programs." In compliance with the EO, effective immediately, the Department hereby terminates the Framework Agreement with AFSA and will no longer recognize AFSA as an exclusively recognized labor organization.

The Department will cease all further payroll dues allotments immediately. Additionally, all recurring meetings between AFSA and the Department are cancelled. Official time for the AFSA President, AFSA State VP, and the additional AFSA representative on 100% official time under the terms of Article 5, Section 3(b) of the Framework Agreement will end at close of business today. We encourage these employees to be in contact with their CDO to pursue appropriate follow-on assignments.

AFSA elections may not proceed using agency space or government equipment (i.e., .gov messaging). AFSA must also remove all material from and vacate AFSA's Department-provided office suite in HST by COB April 4. AFSA's access to the suite will end no later than Friday, April 4.

## Claims for Relief

### First Cause of Action

*Ultra Vires (Violation of Foreign Service Labor-Management Relations Statute/ Separation of Powers)*

40. AFSA reasserts and realleges the allegations contained in paragraphs 1 through 39 as if fully set forth here.

41. Plaintiff has a non-statutory right of action to enjoin and declare unlawful official action that is *ultra vires*. Courts have jurisdiction to grant relief when the President and his subordinate officials act beyond the scope of their authority and violate the law to the injury of an individual or organization.

42. The Foreign Service Labor-Management Relations Statute ("FSLMRS") provides that subdivisions of covered Departments and Agencies may be excluded from coverage if "(1) the subdivision has as a primary function intelligence, counterintelligence, investigative, or national

13

security work, and (2) the provisions of this subchapter cannot be applied to that subdivision in a manner consistent with national security requirements and considerations." 22 U.S.C. § 4103(b)

43. Although a president has the authority under 22 U.S.C. § 4103(b) to exempt a subdivision of the Department of State or USAID from coverage of the FSLMRS if he or she makes a *bona fide*, good faith determination that the Statute "cannot be applied to that subdivision in a manner consistent with national security requirements and considerations," he lacks the authority to exempt the entirety of the Department of State and USAID from coverage of the Statute because it would be tantamount to repealing the entire statute, which may only be done by Congress.

44. The fact that, since 1973, Foreign Service members have worked at Departments and Agencies set forth in the March 27, 2025 Executive Order, have served their country while exercising their rights to organize and bargain collectively belies the claim that the provisions of the FSLMRS cannot be applied to those Departments and Agencies "in a manner consistent with national security requirements and considerations."

45. The White House's Fact Sheet that accompanied the Executive Order further rebuts any claim that the Executive Order was based upon any *bona fide*, good faith determination necessarily to eliminate statutory rights under 22 U.S.C. § 4103(b) about each included Department and Agency: this Order was driven not by the function of the Department or Agency but by the fact that Foreign Service members have chosen AFSA as their elected representative. The White House admitted President Trump eliminated the Foreign Service members' statutory rights to strike a blow at "hostile Federal unions," like AFSA, that it believes are "enable[d]" by the FSLMRS.

46. Rather than consider whether the FSLMRS could be applied consistent with national security requirements, President Trump used the pretext of national security to deprive Foreign

Service members of their statutory rights under that statute in order to attack the Foreign Service members' exclusive bargaining representative, AFSA, because it would not "work with him."

47. The Defendant Trump's March 27, 2025 Executive Order titled *Exclusions from Federal Labor-Management Programs,* in which he exempted the entirety of the Department of State and USAID from the coverage of the Foreign Service Labor Management Relations Statute, was in violation of Section 4013(b) and *ultra vires*.

48. The Defendant Ezell's March 27, 2025 *Guidance on Executive Order Exclusions from Federal Labor-Management Programs,* to the extent that it applied to Foreign Service members to whom Congress granted collective bargaining rights, was also *ultra vires* because it relied on and enforced an illegally issued and invalid Executive Order.

49. The Defendant Rubio's March 31, 2025 order to AFSA, issued through his subordinate, terminating AFSA's collective bargaining agreement, official time, access to office space and dues allotment, was also *ultra vires* because it relied on and enforced an illegally issued and invalid Executive Order and on illegally issued and invalid *Guidance* from Defendant Ezell.

## Second Cause of Action

### *Ultra Vires (Violation of Foreign Service Labor-Management Relations Statute)*

50. AFSA reasserts and realleges the allegations contained in paragraphs 1 through 49 as if fully set forth here.

51. Plaintiff has a non-statutory right of action to enjoin and declare unlawful official action that is *ultra vires*. Courts have jurisdiction to grant relief when the President and his subordinate officials act beyond the scope of their authority and violate the law to the injury of an individual or organization.

52. The President may exclude any subdivision of the Department from coverage of the Foreign Service Labor Management Relations Statute *only* if he determines that the subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work, *and* the provisions of the Statute cannot be applied to that subdivision in a manner consistent with national security requirements and considerations.

53. The exclusion of the entirety of the Department of State and USAID from coverage of the Statute was not based on any actual or *bona fide* determination that the Foreign Service members in each and every subdivision in both the State Department and USAID were engaged in intelligence, counterintelligence, investigative, or national security work, *and* that allowing them to collectively bargain as they have done during ten presidencies for over half a century has now become inconsistent with national security. Simply stated, nothing has changed that now warrants the exclusion or anything upon which a determination can be based. The fact sheet that the White House issued reveals other motives for terminating AFSA's and other labor organizations' collective bargaining rights, as does the sweeping scope of the Order as well as the selective exclusions from the Order of a handful a favored unions (such as the police unions and Border Patrol agents) who are viewed as supporters of the President's agenda.

54. Thus, the Defendant Trump was indifferent to the purposes of the Foreign Service Labor Management Relations Statute and has acted deliberately in contravention of them. Therefore, the Defendant Trump's March 27, 2025 Executive Order titled *Exclusions from Federal Labor-Management Programs,* in which he exempted the entirety of the Department of State and USAID from the coverage of the Foreign Service Labor Management Relations Statute, was *ultra vires*.

55. The Defendant Ezell's March 27, 2025 *Guidance on Executive Order Exclusions from Federal Labor-Management Programs,* to the extent that it applied to Foreign Service members to

whom Congress granted collective bargaining rights, was also *ultra vires* because it relied on and enforced an illegally issued and invalid Executive Order.

56. The Defendant Rubio's March 31, 2025 order to AFSA, issued through his subordinate, terminating AFSA's collective bargaining agreement, official time, access to office space and dues allotment, was also *ultra vires* because it relied on and enforced an illegally issued and invalid Executive Order and on illegally issued and invalid *Guidance* from Defendant Ezell.

### Third Cause of Action

*Violation of AFSA's First Amendment Rights*

57. AFSA reasserts and realleges the allegations contained in paragraphs 1 through 56 as if fully set forth here.

58. "[T]he First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech." *Lozman v. City of Riviera Beach*, 585 U.S. 87, 90 (2018).

59. AFSA's litigation against Defendant Trump's actions is protected speech and petitioning activity. *See, e.g.*, *BE & K Constr. Co. v. NLRB,* 536 U.S. 516, 542-525 (2002); *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741 (1983); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972); *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 542-49 (2000) ("advocacy by [an] attorney to the courts" is "speech and expression" that enjoys First Amendment protection); *McDonald v. Smith*, 472 U.S. 479, 484 (1985) (holding that "filing a complaint in court is a form of petitioning activity" that the First Amendment protects).

60. AFSA's public criticisms of the Defendant Trump's attacks on the integrity and professionalism of the Foreign Service, and its public opposition to his attempts to reshape it into a

personally loyal "workforce of patriots" (as he has characterized his aims) also constitutes activity protected by the First Amendment.

61. The Executive Order retaliates against AFSA for that protected First Amendment activity. Indeed, the White House's Fact Sheet on the Executive Order proclaims the Order's retaliatory motive. To justify the Executive Order, the Fact Sheet explains that "[c]ertain Federal unions have declared war on President Trump's agenda."

62. The Executive Order also constitutes "viewpoint discrimination" because it excludes those labor organizations which have been supportive of the Defendant Trump. As the Fact Sheet frankly explains, "President Trump supports constructive partnerships with unions who work with him" but that "he will not tolerate mass obstruction that jeopardizes his ability to manage agencies with vital national security missions."

63. Defendants have also acted to illegally curtail and infringe AFSA's First Amendment rights by carrying out the Executive Order and terminating AFSA's collective bargaining rights and terminating its collective bargaining agreements and the privileges and benefits AFSA enjoys under the Statute and which it has negotiated in its collective bargaining agreements.

64. The Executive Order thus "constitutes a sufficiently adverse action" against AFSA "to give rise to an actionable First Amendment claim." *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022). The Order, in other words, "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Connelly v. Cnty. of Rockland*, 61 F.4th 322, 325 (2d Cir. 2023).

**Prayer for Relief**

WHEREFORE, the Plaintiff AFSA requests judgment against the Defendants:

    A.    Declaring that Sections 1(b) and 3 of the March 27, 2025 Executive Order are unlawful and null and void.

    B.    Declaring that the Defendant Ezell's March 27, 2025, *Guidance on Executive Order Exclusions from Federal Labor-Management Programs*, is unlawful as applied to AFSA.

    C.    Enjoining Defendant Rubio and all his agents and subordinates from implementing Sections 1(b) and 3 of the March 27, 2025 Executive Order.

    D.    Enjoining Defendant Rubio and all agents and subordinates from implementing the Defendant Ezell's March 27, 2025, *Guidance on Executive Order Exclusions from Federal Labor-Management Programs* with respect to AFSA.

    E.    Enjoin Defendants State, USAID, and Rubio from continuing to fail to recognize AFSA as the exclusive representative of the members of the Foreign Service employed by State and USAID and order their agents and subordinates to restore AFSA's collective bargaining agreements with State and USAID and to honor the agreements' provisions and any of the Statute's provisions concerning dues allotments, official time, use of and access to agency resources including office space.

    F.    Awarding Plaintiff reasonable attorney fees and costs incurred.

    G.    Ordering such further relief as the Court may deem just and appropriate.

Dated: April 7, 2025                      Respectfully submitted,

                                              By:   */s/ Richard J. Hirn*
                                                      Richard J. Hirn
                                                      D.C. Bar No. 291849
                                                     richard@hirnlaw.com
                                                     5335 Wisconsin Ave., NW, Suite 440
                                                     Washington, D.C. 20015
                                                     (202) 274-1812

By:    */s/ Keith R. Bolek*
       Keith R. Bolek
       Bar No. 463129
       kbolek@odonoghuelaw.com

       April H. Pullium
       Bar No. 198026
       apullium@odonoghuelaw.com

       O'Donoghue & O'Donoghue LLP
       5301 Wisconsin Avenue, Suite 800
       Washington, D.C. 20015
       (202) 362-0041

By:    */s/ Sharon L. Papp*
       Sharon L. Papp*
       General Counsel
       D.C. Bar No. 107992
       papp@afsa.org

       Raeka Safai*
       Deputy General Counsel
       D.C. Bar No. 977301
       safai@afsa.org

       American Foreign Service Association
       2101 E Street, NW
       Washington, DC 20037
       (202) 338-4045

       *D.D.C. Application Pending

       *Counsel for Plaintiff American Foreign Service Association*