**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ | ) | |
| AMERICAN FOREIGN SERVICE | ) | |
| ASSOCIATION, | ) | |
|  | ) | |
| *Plaintiff*, | ) | Civil Action No. 25-cv-1030-PLF |
|  | ) | |
| v. | ) | |
|  | ) | |
| DONALD TRUMP, et al., | ) | |
|  | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF**
**AMERICAN FOREIGN SERVICE ASSOCIATION'S**
**MOTION FOR PRELIMINARY INJUNCTION**

RICHARD J. HIRN
D.C. Bar No. 291849
richard@hirnlaw.com
5335 Wisconsin Ave., NW, Suite 440
Washington, D.C. 20015
(202) 274-1812

KEITH R. BOLEK
D.C. Bar No. 463129
kbolek@odonoghuelaw.com
APRIL H. PULLIUM
D.C. Bar No. 198026
apullium@odonoghuelaw.com
O'Donoghue & O'Donoghue LLP
5301 Wisconsin Avenue, NW, Suite 800
Washington, D.C. 20015
(202) 362-0041

SHARON L. PAPP*
papp@afsa.org
D.C. Bar No. 107992
RAEKA SAFAI*
safai@afsa.org
D.C. Bar No. 977301
American Foreign Service Ass'n
2101 E Street, NW
Washington, D.C. 20037

* Admissions Pending

Counsel for Plaintiff AFSA

# TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................................. ii

TABLE OF ACRONYMS .......................................................................................... vivii

ARGUMENT ................................................................................................................. 1

I.    AFSA Has Established a Substantial Likelihood of Success on the Merits. ...................... 1

    A.    The Court has jurisdiction because AFSA's challenge to the Executive Order does not fall within the Foreign Service Labor Management Relations Statute's remedial scheme................................................................................................................. 1

    B.    AFSA is Likely to Succeed in Demonstrating that Exec. Order No. 14,251 is Illegal. ...................................................................................................................... 7

        1.    The President lacks statutory authority to exempt the entire Department of State and USAID from coverage of Subchapter X of the FSA.................. 7

        2.    The President's § 4103(b) determinations are subject to judicial review. .. 9

        3.    AFSA has overcome the presumption of regularity by making the strong showing of bad faith or improper behavior (including retaliation for the exercise by AFSA of its First Amendment rights to speak and to petition), and by demonstrating that the President was indifferent to the purposes and requirements of the FSA and acted deliberately in contravention of them. ................................................................................................................ 10

II.   AFSA has proven that the Defendants are currently inflicting harms that will become irreparable absent a preliminary injunction. ..................................................... 16

III.  The Balance of Equities and Public Interest Still Favor an Injunction.......................... 23

CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of Gov't Emps. v. Trump,*
   929 F.3d 748 (D.C. Cir. 2019)...................................................................... 2

*Am. Fed'n of Gov't. Emps. v. Sec'y of Air Force,*
   716 F.3d 633 (D.C. Cir. 2013)...................................................................... 7

*\*Am. Fed'n of Govt. Emps. v. Reagan,*
   870 F.2d 723 (D.C. Cir. 1989)...................................................................9, 11

*\*Am. Fed'n of Govt. Emps. v. Reagan,*
   665 F. Supp. 31 (D.D.C. 1987) ..................................................................... 1

*\*Am. Foreign Serv. Ass'n v. Baker,*
   895 F.2d 1460 (D.C. Cir. 1990)................................................................. 2, 6

*Am. Foreign Serv. Ass'n v Trump,*
   25-cv-352 (CJN), 2025 WL 573762 (Feb. 25, 2025).................................... 5

*\*Asseo v. Centro Medico del Turabo,*
   900 F.2d 445 (1st Cir. 1990) .................................................................. 16, 22

*\*Axon Enter., Inc. v. Fed. Trade Comm'n,*
   598 U.S. 175 (2023)...................................................................................... 7

*Bennett v. U.S. Sec. & Exch. Comm'n,*
   844 F.3d 174 (4th Cir. 2016) ........................................................................ 2

*\*City of Ketchikan v. Cape Fox Corp.,*
   85 F.3d 1381 (9th Cir. 1996) ........................................................................ 8

*\*Cole v. Young,*
   351 U.S. 536 (1956)...................................................................................... 9

*\*Ctr. for Biological Diversity v. Mattis,*
   868 F.3d 803 (9th Cir. 2017) ........................................................................ 9

*\*Doe v. McAleenan,*
   415 F. Supp. 3d 971 (D.D.C. 2019) ........................................................... 23

*Donohue v. Mangano,*
   886 F. Supp. 2d 126 (E.D.N.Y. 2012) ....................................................... 17

*\*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
   561 U.S. 477 (2010)...................................................................................... 2

*Glasser v. Heartland Health Care Ctr.*,
333 F. Supp. 2d 607 (E.D. Mich. 2003) ....................................................... 22

\*International Union of Elec., Radio & Mach. Workers v. NLRB,
426 F.2d 1243 (D.C. Cir. 1970)..................................................................... 22

*Local 2677, Am. Fed'n of Gov't Emps. v. Phillips*,
358 F. Supp. 60 (D.D.C. 1973) ..................................................................... 25

*Mitchell v. Forsyth*,
472 U.S. 511 (1985)....................................................................................... 24

\*Moore-Duncan ex rel. NLRB v. Horizon House Developmental Svcs.,
155 F. Supp. 2d 390 (E.D. Pa. 2001) ............................... 18, 19, 20, 21, 22

\*Nat'l Rifle Assn. of Am. v. Vullo,
602 U.S. 175 (2024)....................................................................................... 16

\*Nat'l Treas. Emps. Union v. Trump,
No. 25-cv-0935 (PLF) (D.D.C. Apr. 28, 2025) ............................................. 9

*Nat'l Treasury Emps. Union v. Reagan*,
1981 WL 150530 (D.D.C. Sept. 3, 1981) ................................................. 9, 22

*Nat'l Weather Serv. Emps. Organ. v. FLRA*,
966 F.3d 875 (D.C. Cir. 2020)........................................................................ 5

\*NLRB v. Electro-Voice,
83 F.3d 1559 (7th Cir. 1996) ........................................................................ 16

*Romer v. Evans*,
517 U.S. 620 (1996)....................................................................................... 10

\*SEIU Health Care Mich. v. Snyder,
875 F. Supp. 2d 710 (E.D. Mich. 2012) ........................................... 16, 17, 21

\*Small v. Avanti Health Sys., LLC,
661 F.3d 1180, 1191 (9th Cir. 2011) ............................................... 16, 22

*Speaks v. U.S. Tobacco Coop., Inc.*,
31 F.4th 838, 843 (4th Cir. 2022) .................................................................. 8

*Spokane & Inland Empire Railroad Co. v. United States*,
241 U.S. 344 (1916).......................................................................................... 8

*Talbott v. United States*,
No. 25-cv-420, 2025 WL 842332 (D.D.C. Mar. 18, 2025).......................... 14

*Thunder Basin Coal Co. v. Reich,*
     510 U.S. 200 (1994) ................................................................. 1, 2, 6

*Trump v. Hawaii,*
     585 U.S. 667 (2018) ................................................................. 10

*United States v. Am. Tele. & Tele. Co.,*
     567 F.2d 121 (D.C. Cir. 1977) ................................................ 24

*United States v. U.S. Dist. Ct. for the E.D. Mich.,*
     407 U.S. 297 (1972) ................................................................. 24

*Whitman v. Am. Trucking Ass'ns, Inc.,*
     531 U.S. 457 (2001) ................................................................. 6

*Wilmer, Cutler, Pickering, Hale and Dorr LLP v. Exec. Office of the Pres.,*
     No. 25-cv-917, 2025 WL 946979 (March 28, 2025) ................. 14, 15, 21

*Youngstown Sheet & Tube Co. v. Sawyer,*
     103 F. Supp. 569 (D.D.C. 1952), *aff'd,* 343 U.S. 579 (1952) ........... 25

*Youngstown Sheet & Tube Co. v. Sawyer,*
     343 U.S. 579 (1952) ................................................................. 23, 25

**Statutes**

5 U.S.C. § 7103(b)(1) ....................................................................... 22

5 U.S.C. § 7106(a) ........................................................................... 12

5 U.S.C. § 7113(b)(1) ....................................................................... 3

5 U.S.C. § 7118 ............................................................................... 2

5 U.S.C. § 7123(a)(1) ....................................................................... 5

*22 U.S.C. § 4101 ............................................................................ 24

*22 U.S.C. § 4103(b) ....................................................................... 5, 7, 22

*22 U.S.C. § 4105(a) ....................................................................... 12

*22 U.S.C. § 4106(a), (b) ................................................................. 3

22 U.S.C. § 4107(b) ........................................................................ 3

22 U.S.C. § 4109(a) ........................................................................ 4

*22 U.S.C. § 4114(a), (b) ................................................................. 4

*22 U.S.C. § 4114(d) ............................................................................ 4, 5

22 U.S.C. § 4115 .................................................................................... 2

22 U.S.C. § 4116 .................................................................................... 2

22 U.S.C. § 4131 .................................................................................... 5

22 U.S.C. § 4135 .................................................................................... 4

## Agency Decisions

*Am. Fed'n of Gov't Emps., Loc. 2118,
    2 F.L.R.A. 916 (1980) ...................................................................... 3

*Dep't of Defense, Dep't of Defense Educ. Activity and Nat'l Educ. Assn.,
    AT-CA-21-0324 (April 4, 2025) ...................................................... 3

Dep't of the Air Force, 913ᵗʰ Air Wing, Willow Grove Air Reserve Station,
    57 F.L.R.A. 852, 858 (2002) .......................................................... 13

*Dep't of the Navy, Naval Telecom. Ctr., Ward Circle Activity,
    6 F.L.R.A. 498, 500 (1981) .............................................................. 3

*Dep't of the Treasury, Bureau of Alcohol, Tobacco & Firearms, Bos. Dist. Off., Crim. Enf't
    Activity, 3 F.L.R.A. 30, 31 (1980) .................................................... 3

*Romero v. Tran,
    33 Vet. App. 252, 254 (2021) ....................................................... 9, 11

SPORT and Dep't of Air Force, Edwards AFB,
    68 F.L.R.A. 9, 10-11 (2014) .......................................................... 13

*U.S. Attorney's Office, Southern Dist. of Texas,
    57 F.L.R.A. 750 (2002) .................................................................... 3

*U.S. Environ. Prot. Agency and AFGE Council 238,
    0-AR-6001 (April 4, 2025) ................................................................ 3

## Other Authorities

90 Fed. Reg. 16427 (Apr. 17, 2025) ...................................................... 15

About NBPC, NBPC, https://bpunion.org/about-nbpc/ (last visited Apr. 30, 2024) .................. 15

Admin. Office of U.S. Fed. Courts, Table B-4A, U.S. Courts of Appeal, Jud. Bus. (Sep. 30, 2024), *available at* https://www.uscourts.gov/data-news/data-tables/2024/09/30/judicial-business/b-4a (last visited Apr. 26, 2025).................................................................. 19

*Bureau of Economic and Business Affairs*, U.S. Dep't of State, https://www.state.gov/bureaus-offices/under-secretary-for-economic-growth-energy-and-the-environment/bureau-of-economic-and-business-affairs/ (last visited Apr. 30, 2025)....................................................11

*Division for Trade Policy and Negotiations*, U.S. Dep't of State, https://www.state.gov/bureaus-offices/under-secretary-for-economic-growth-energy-and-the-environment/bureau-of-economic-and-business-affairs/division-for-trade-policy-and-negotiations/ (last visited Apr. 30, 2025) ......................................................................................................................11

Erich Wagner, *VA is selectively enforcing Trump's order stripping workers of union rights,* GOVERNMENT EXECUTIVE (April 18, 2025) https://www.govexec.com/workforce/2025 /04/va-selectively-enforcing-trumps-order-stripping-workers-union-rights/404694/, last visited April 25, 2025) ................................................................................................................. 16

Exec. Order No. 14,215, *Ensuring Accountability for All Agencies*,
90 Fed. Reg. 10447 (Feb. 24, 2025) ....................................................... 5

Executive Order No. 14,211,
90 Fed. Reg. 9,831 (Feb. 18, 2025) .................................................... 20

*National Border Patrol Council Endorses Trump at Arizona Rally*, THE HILL, (Oct 14, 2024), https://thehill.com/latino/4932425-trump-border-patrol-union-endorsement/ ...................... 15

*OPM, *Guidance on Exec. Order Exclusions from Fed. Labor-Mgmt. Programs*, *available at* https://www.chcoc.gov/content/guidance-executive-order-exclusions-federal-labor-management-programs (last visited Apr. 30, 2025) .............................................................. 18

Ryan J. Foley, *Largest Fed. Emp. Union, a Leading Trump Opponent, to Lay Off More than Half of Staff*, Assoc. Press (Apr. 25, 2025), *available at:* https://apnews.com/article/afge-federal-union-trump-cuts-layoffs-downsizing-53c0a1491cc5af65278fbd16b8cfb6b5 (last visited Apr. 26, 2025) ....................................................................................................... 21

*Under Secretary for Economic Growth, Energy, and the Environment*, U.S. Dep't of State, https://www.state.gov/bureaus-offices/under-secretary-for-economic-growth-energy-and-the-environment/ (last visited Apr. 30, 2025).................................................................. 12

*White House, *Fact Sheet: President Donald J. Trump Exempts Agencies with Nat'l Sec. Missions from Fed. Coll. Barg. Reqs.* (March 27, 2025), https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-exempts-agencies-with-national-security-missions-from-federal-collective-bargaining-requirements/ (last visited Apr. 29, 2025)..........11

## TABLE OF ACRONYMS

AFSA ........................................................................................ American Foreign Service Association

Board..................................................................................... National Labor Relations Board

FSA ........................................................................................Foreign Service Act

FSGB.....................................................................................Foreign Service Grievance Board

FSLRB ................................................................................. Foreign Service Labor Relations Board

FSLMRS ........................................................ Federal Service Labor-Management Relations Statute

NLRA....................................................................................National Labor Relations Act

OPM..................................................................................... Office of Personnel Management

RIF .......................................................................................Reduction in Force

State...................................................................................... U.S. Department of State

USAGM ................................................................................ U.S. Agency for Global Media

USAID .............................................................. U.S. Agency for International Development

Plaintiff American Foreign Service Association ("AFSA") respectfully submits this reply brief in support of its motion for a preliminary injunction against enforcement of Executive Order No. 14,251, *Exclusions from Labor-Management Relations Programs.*

## ARGUMENT

### I.     AFSA Has Established a Substantial Likelihood of Success on the Merits.

#### A.     *The Court has jurisdiction because AFSA's challenge to the Executive Order does not fall within the Foreign Service Labor Management Relations Statute's remedial scheme.*

This Court has held that it has jurisdiction to review the legality of Executive Orders that exclude certain agency subdivisions from the coverage of the Federal Service Management Relations Statute on national security grounds. "The validity of the Executive Order is a question of law, and is thus properly before this Court for resolution." *Am. Fed'n of Govt. Emps., AFL-CIO v. Reagan*, 665 F. Supp. 31, 32 (D.D.C. 1987) (finding Exec. Order No. 12,559 not a proper exercise of authority under 5 U.S.C. § 7103(b)), *rev'd on other grounds*, 870 F.2d 723 (D.C. Cir. 1989).

Defendants erroneously argue that "channeling" requirements under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994), foreclose AFSA from challenging the Executive Order before this Court and that AFSA is required to instead bring its challenge before the Federal Labor Relations Authority ("FLRA") or the Foreign Service Grievance Board ("FSGB"). But the channeling requirement does not apply here. As the Supreme Court has explained, "we presume that Congress does not intend to limit jurisdiction if 'a finding of preclusion could foreclose all meaningful judicial review'; if the suit is 'wholly collateral to a statute's review provisions; and if the claims are 'outside the agency's expertise.' These considerations point against any limitation

on review here." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489-90 (2010), quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994).

The availability of "meaningful judicial review is the most important factor in the *Thunder Basin* analysis." *Bennett v. U.S. Sec. & Exch. Comm'n*, 844 F.3d 174, 183 n.7 (4th Cir. 2016). In *Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 759 (D.C. Cir. 2019), the Court of Appeals found that the unions could "ultimately obtain judicial review of and relief from the executive orders by litigating their claims" by first filing unfair labor practice charges with the General Counsel of the Federal Labor Relations Authority ("FLRA"), or a "negotiability appeal" directly with the FLRA, and then seeking judicial review of the FLRA's order. However, Subchapter X of the Foreign Service Act (FSA) does not provide for "meaningful judicial review" of any decision of the FLRA General Counsel or the Foreign Service Labor Relations Board ("FSLRB") in any administrative challenge to Exec. Order No. 14,251. In fact, as will be shown, *even administrative review has been foreclosed because of Exec. Order No. 14,251.*

Section 1015 of the FSA, 22 U.S.C. § 4115, identifies unfair labor practices prohibited by the Act. The General Counsel of the FLRA investigates unfair labor practice charges and decides whether to issue an unfair labor practice complaint and bring the matter to hearing before the FSLRB, just as the General Counsel does under the Federal Service Labor Management Relations Statute when it brings an unfair labor practice case before the FLRA or its designee (an Administrative Law Judge). 22 U.S.C. § 4116; *compare* 5 U.S.C. § 7118. And as is the case with the Federal Service Labor Management Relations Statute, "[t]he Foreign Service Act does not provide for judicial review of a General Counsel decision not to file a complaint." *Am. Foreign Serv. Ass'n v. Baker*, 895 F.2d 1460, 1461 (D.C. Cir. 1990). But even if AFSA filed an unfair labor practice charge, it wouldn't even get through the General Counsel's door. The FLRA General

Counsel's Office has issued notices to other unions who have lost recognition because of Exec. Order No. 14,251 that it has deferred processing and investigation of unfair labor practice charges they have filed. (See April 9, 2025 email and letter from Acting Regional Director to Richard Hirn, attached hereto as Exhibit A.) In addition, the FLRA has consistently dismissed pending unfair labor practice charges and other cases filed by unions that have lost recognition as a result of executive orders excluding agencies or subdivisions from the Federal Service Labor Management Relations Statute based on "national security" under 5 U.S.C. § 7113(b)(1). *U.S. Attorney's Office, Southern Dist. of Texas*, 57 F.L.R.A. 750 (2002) (dismissing three unfair labor practices cases); *Dep't of the Treasury, Bureau of Alcohol, Tobacco & Firearms, Bos. Dist. Off., Crim. Enf't Activity*, 3 F.L.R.A. 30, 31 (1980) (dismissing representation petition); *Am. Fed'n of Gov't Emps., Loc. 2118*, 2 F.L.R.A. 916, 917 (1980) (dismissing negotiability appeal). "Where the President has specifically excluded an agency or activity from coverage under the Statute by issuing an executive order, the Authority is clearly without jurisdiction." *Dep't of the Navy, Naval Telecom. Ctr., Ward Circle Activity*, 6 F.L.R.A. 498, 500 (1981) (dismissing representation petition). The Authority has issued orders directing parties to show cause why currently pending cases should not be dismissed as a result of Exec. Order No. 14,251. *E.g.*, *U.S. Environ. Prot. Agency and AFGE Council 238*, 0-AR-6001 (April 4, 2025) (arbitration appeal); *Dep't of Defense, Dep't of Defense Educ. Activity and Nat'l Educ. Assn.*, AT-CA-21-0324 (April 4, 2025) (unfair labor practice case) (attached as Exhibits B, C). Although these decisions and actions are by the Federal Labor Relations Authority and not the Foreign Service Labor Relations Board, the Chair of the FLRA and FSLRB are the same and "[d]ecisions of the Board under this subchapter shall be consistent with decisions rendered by the Authority under chapter 71 of title 5, other than in cases in which the Board finds that special circumstances require otherwise." 22 U.S.C. § 4106(a), (b); § 4107(b).

Nor may AFSA obtain judicial review by filing a grievance under their collective bargaining agreement (known as an "implementation dispute" under Subchapter X of the FSA). "Any dispute between the Department and the exclusive representative concerning the effect, interpretation, or a claim of breach of a collective bargaining agreement shall be resolved through procedures negotiated by the department and the exclusive representative," and unresolved implementation disputes can be appealed to the Foreign Service Grievance Board ("FSGB"). 22 U.S.C. § 4114(a), (b). The FSGB is created by Subchapter XI of the FSA. 22 U.S.C. § 4135. The FSGB no longer recognizes AFSA as the representative of State Department or USAID employees because of the Executive Order. *See* ECF No. 10-7, Papp Decl., Exhibit 1. Decisions of the FSGB in "implementation disputes" filed by AFSA are appealed to the FSLRB. 22 U.S.C. § 4114(b). As discussed above, any such appeal will be dismissed. But even if AFSA's grievance got that far, it could ***never*** obtain judicial review. The FSA unambiguously states: "Resolutions of disputes under this section shall not be subject to judicial review." 22 U.S.C. § 4114(d). The "Judicial Review and Enforcement" section of Subchapter X reiterates that decisions of the Board in "implementation disputes" are excluded from judicial review. "*Except as provided in section 4114(d)* of this title, any person aggrieved by a final order of the Board may . . . institute an action for judicial review of such order in the United States Court of Appeals for the District of Columbia." 22 U.S.C. § 4109(a) (emphasis added). It should be noted that this preclusion of judicial review of any and all Board decisions involving "implementation disputes" differs from the Federal Service Labor Management Relations Statute, which allows judicial review of FLRA decisions in arbitration

cases which involve an unfair labor practice. 5 U.S.C. § 7123(a)(1); *Nat'l Weather Serv. Emps. Organ. v. FLRA*, 966 F.3d 875, 879-80 (D.C. Cir. 2020).[1]

By the same token, AFSA's claims are "wholly collateral" to the Statute's review provisions and outside of the Foreign Service Labor Relations Board's expertise – *besides the fact that it is now procedurally impossible to bring a case before the Board*. Defendants cannot argue that the "regularity" of the President's decision to exclude the State Department and USAID from the coverage of the Statute under the authority of § 1003 of the FSA (22 U.S.C. § 4103(b)) is something that Congress intended a body subordinate to him to determine. In fact, it is the President's position that the Board members, like those of other so-called "independent agencies," lack the ability under the Constitution to exercise judgment contrary to his own. According to Section 7 of Exec. Order No. 14,215, *Ensuring Accountability for All Agencies*, 90 Fed. Reg. 10447 (Feb. 24, 2025),

> The President and the Attorney General's opinions on questions of law are controlling on all employees in the conduct of their official duties. No employee of the executive branch acting in their official capacity may advance an interpretation of the law as the position of the United States that contravenes the President or the Attorney General's opinion on a matter of law, including but not limited to the issuance of regulations, guidance, and positions advanced in litigation, unless authorized to do so by the President or in writing by the Attorney General.

---

[1] In *Am. Foreign Serv. Ass'n v Trump*, 25-cv-352 (CJN), 2025 WL 573762, at *8-*9 (Feb. 25, 2025), Judge Nichols found that it was unlikely that the Court has jurisdiction over AFSA's request for a preliminary injunction in a case challenging the repatriation of overseas USAID employees and their placement on administrative leave. The grievance procedure which he discussed is found in Subchapter XI of the FSA, under which individual members of the Foreign Service can grieve matters pertaining to their individual employment conditions. 22 U.S.C. § 4131. Judge Nichols was not referring to the grievance procedure contained in Subchapter X, discussed above, under which AFSA can seek to resolve "implementation disputes" over contract violations. These are two distinct grievance procedures in two separate sections of the FSA (although they involve the same FSGB). The decisions of the FSGB on Subchapter XI grievances are judicially reviewable in U.S. District Court under 22 U.S.C. § 4140(a), as Judge Nichols noted. 2025 WL 573762 at *10. But "implementation disputes" that arise under Subchapter X that are decided by the Foreign Service Grievance Board are appealed to the Foreign Service Labor Relations Board (as they raise "labor" issues as opposed to personal employment disputes) and the Board's decisions in those cases are **not** judicially reviewable. 22 U.S.C. § 4114(d).

Similarly, under the "unified executive" theory embraced by Exec. Order No. 14,215, the Foreign Service Labor Relations Board is not authorized to second-guess the President's determination that the exclusion of the State Department and USAID is necessary for "national security requirements and considerations." Could this subordinate body possibly find that the President's determination was not *bona fide* or that it was based on impermissible considerations other than national security?

If Congress intended for the Board to review Presidential determinations made pursuant to § 4103(b), it would have included a clear avenue for it to do so in Subchapter X. Congress, as they say, "does not . . . hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001).

The Defendant's heavy reliance on *Am. Foreign Serv. Ass'n v. Baker*, 895 F.2d 1460 (D.C. Cir. 1990), is misplaced for four reasons. *First*, the sole dispute in *AFSA v. Baker* was with the actions of the Secretary of the State, not the President. *Second*, as the Court noted in that case, AFSA alleged only a breach of the duty to bargain, which the Foreign Service Labor Relations Board was capable of addressing, and not a constitutional claim (as AFSA raises here). *Id.* at 1462-63. *Third*, the FLRA's General Counsel had actually issued an unfair labor practice complaint over the matter and was concurrently litigating it on AFSA's behalf. *Id.* at 1461, 1463. The Court did note, however, that had the FLRA General Counsel declined to issue a complaint, his decision would be unreviewable. *Id.* at 1461. *Fourth*, the Court of Appeals' decision in *AFSA v. Baker* predated the Supreme Court's decision in *Thunder Basin*, 510 U.S. 200 (1994). To the extent that the Court opined that Congress's failure to provide a mechanism for judicial review in a particular statute precludes district court jurisdiction, 895 F.2d at 1462, *Thunder Basin* and its progeny hold the opposite. The lack of "meaningful judicial review" in a statutory scheme indicates that district courts do in fact have jurisdiction, rather than they don't. "The first *Thunder Basin* factor

recognizes that Congress rarely allows claims about agency action to escape effective judicial review." *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 186 (2023).

Similarly, *Am. Fed'n of Gov't. Emps. v. Sec'y of Air Force*, 716 F.3d 633 (D.C. Cir. 2013) is also inapplicable because the Court in that case found that the Federal Service Labor Management Relations Statute "in fact provides a means to review the Air Force instructions [at issue] – including, in some circumstances, judicial review – via at least … three routes." *Id.* at 638. And, to the extent that *AFGE v. Secretary of Air Force* can be read to imply that all judicial review is precluded if Congress does not provide a path to the courts in the statutory scheme, it failed to consider *Thunder Basin*, which is not cited even once in the decision.[2]

**B.    *AFSA is Likely to Succeed in Demonstrating that Exec. Order No. 14,251 is Illegal.***

**1.    *The President lacks statutory authority to exempt the entire Department of State and USAID from coverage of Subchapter X of the FSA.***

AFSA has demonstrated that the President lacks authority under the clear text of Section 1003 of the FSA to exclude the entirety of the Department of State or the entirety of USAID from coverage. The Defendants have offered no effective rebuttal. Section 1003 of the FSA only permits the President to "exclude *any subdivision* of the Department from coverage . . . if the President determines that . . . the provisions of this subchapter cannot be applied *to that subdivision* in a manner consistent with national security requirements and considerations." 22 U.S.C. § 4103(b) (emphasis added). There is no statutory authority to exclude the entirety of the Department of State

---

[2] In *AFGE v. Trump*, this Court implied that there might be a problem reconciling *AFGE v. Secretary of Air Force* with *Thunder Basin,* but side-stepped the issue. "We need not determine the extent to which *Air Force* would allow a statutory scheme to foreclose review and relief. This case does not test *Air Force*'s outer bounds because the unions here are not cut off from review and relief." 929 F.3d at 757.

or USAID from coverage. The President's expansive reading of § 1003 "violates the canon of construction that statutory language should not be interpreted in a way where the exception swallows the rule." *Speaks v. U.S. Tobacco Coop., Inc.*, 31 F.4th 838, 843 (4th Cir. 2022). There is an "elementary rule requiring that exceptions from a general policy which a law embodies should be strictly construed; that is, should be so interpreted as not to destroy the remedial processes intended to be accomplished by the enactment." *Spokane & Inland Empire Railroad Co. v. United States*, 241 U.S. 344, 350 (1916).

Moreover, the Defendants' claim that all subdivisions of State and USAID qualify for exclusion because "the work of a subdivision can entail *multiple* 'primary' functions" is an oxymoron. Defs' Opp. (ECF No. 23) at 30 (emphasis added). By definition, there can only be *one* "primary" anything, despite Congress's use of the article "a" rather than "the" before the word "primary." *City of Ketchikan v. Cape Fox Corp.*, 85 F.3d 1381, 1384 (9th Cir. 1996) (rejecting the claim that by using the article "a" rather than "the," in the Alaska Native Claims Settlement Act, Congress indicated that a business can have more than one primary place). Thus, to qualify for an exemption under § 1003(b), each and every subdivision of the State Department and USAID must have intelligence, counterintelligence, investigative or national security work as *its number one function above all else.* The Defendants' Memorandum does *not* make this contention. Simply stating that "[t]heir role, and that of their employing subdivisions, is inextricably intertwined with a national security function" is not sufficient. Defs.' Opp. (ECF No. 23) at 30.

Most of the functions of the State Department identified on page 29 of the Defendant's Opposition Memo – "prosperity and democratic values," emerging technology, global health, economic growth, energy and environment, public diplomacy – do not fall with the limited definition of national security offered by the Supreme Court in *Cole v. Young*, 351 U.S. 536, 544

(1956), that being the "protection of the Nation from internal subversion or foreign aggression." Nor does the work of USAID identified by the Defendants: "economic growth, combat the spread of disease, promote democratic reform, and address food insecurity." Defs.' Opp. at 29. "But even if any agency performs *some work* that implicates national security, that does not mean that the entire agency has 'a primary function' of 'national security work.'" *Nat'l Treas. Emps. Union v. Trump*, CA No. 25-0935 (PLF) (D.D.C. Apr. 28, 2025), slip. op. at 29 (emphasis in original).

### 2.    The President's § 4103(b) determinations are subject to judicial review.

"When confronting a statutory question touching on subjects of national security and foreign affairs, a court does not adequately discharge its duty by pointing to the broad authority of the President and Congress and vacating the field without considered analysis." *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 827 (9th Cir. 2017). Indeed, an executive order excluding agencies or their subdivisions from collective bargaining on national security grounds is reviewable in this Circuit, although "the challenged order is entitled to a *rebuttable* presumption of regularity." *Am. Fed'n of Govt. Emps v. Reagan*, 870 F.2d 723, 724 (D.C. Cir. 1989) (emphasis supplied) ("*AFGE*"). This presumption of regularity "is not a carte blanche. After all, the presumption of regularity is rebuttable." *Romero v. Tran*, 33 Vet. App. 252, 254 (2021). The Court of Appeals suggested that this presumption can be rebutted by showing that "the President was indifferent to the purposes and requirements of the Act, or acted deliberately in contravention of them." *AFGE*, 870 F.2d at 728.

The Defendants erroneously rely on *Nat'l Treasury Emps. Union v. Reagan*, 1981 WL 150530 (D.D.C. Sept. 3, 1981) for the proposition that a President's § 7102(b) exclusion is "not reviewable." Defs.' Opp. (ECF No. 23) at 24. That case was overtaken by this Court's and Court of Appeals' later decisions *AFGE v. Reagan*, *supra*, that it is reviewable. Although the Defendants

initially argue that "[t]his Court lacks authority to second guess the President's determinations in Section 3 of the Executive Order" (Defs.' Opp. (ECF No. 23) at 24), they ultimately concede, as they must, that the Executive Order's presumption of regularity may be overcome by a "strong showing of bad faith or improper behavior." Defs.' Opp. (ECF No. 23) at 36-37.

The Defendants also cite *Trump v. Hawaii*, 585 U.S. 667, 686 (2018) for the proposition that the Court should take the *bona fides* of the Executive Order on face value. Defs.' Opp. (ECF No. 23) at 25. However, in that case the Supreme Court accepted the government's concession "that it may be appropriate here for the inquiry to extend beyond the facial neutrality of the order" and "assume[d] that we may look behind the face of the Proclamation" and consider extrinsic evidence. 585 U.S. at 704. And as Justice Kennedy noted in his concurrence, "there may be some common ground between the opinions in this case, in that the Court does acknowledge that in some instances, governmental action may be subject to judicial review to determine whether or not it is 'inexplicable by anything but animus.'" *Id.* at 711 (quoting *Romer v. Evans*, 517 U.S. 620, 632 (1996)). But there is no need for the Court to conduct "a searching inquiry into the President's motives" or to "search for allegedly illicit motives" as the Defendants fear. Defs.' Opp. (ECF No. 23) at 34, 36. As will be discussed, the President advertised those illicit motives to the world.

### 3. *AFSA has overcome the presumption of regularity by making the strong showing of bad faith or improper behavior (including retaliation for the exercise by AFSA of its First Amendment rights to speak and to petition), and by demonstrating that the President was indifferent to the purposes and requirements of the FSA and acted deliberately in contravention of them.*

AFSA has presented clear evidence that rebuts the presumption of regularity: the overbroad and indiscriminate scope of the agencies exempted (encompassing at least two-thirds of the Federal government's unionized workforce); the inexplicable exclusion of Customs and Border Protection and well as all police and firefighters regardless of the agencies for whom they work; the timing

of the issuance of the Executive Order in the absence of a precipitating national security event that might justify it; and, perhaps above all, the personalized, unhinged, anti-union vitriol contained in the White House "Fact Sheet" issued simultaneously with the Order. "[C]ourts have not required the party challenging the presumption to supply more evidence of irregularity when the appearance of irregularity is apparent; to do so would be redundant and wasteful of resources." *Romero*, 33 Vet. App. at 261.

Aside from the anti-union animus (to be discussed), the "Fact Sheet" demonstrates the irrationality of the President's exclusions and that "the President was indifferent to the purposes and requirements of the Act, or acted deliberately in contravention of them." *AFGE*, 870 F.2d at 728. The *only* rationale offered for excluding the Department of State and USAID was that "President Trump has demonstrated how trade policy is a national security tool." White House, *Fact Sheet: President Donald J. Trump Exempts Agencies with Nat'l Sec. Missions from Fed. Coll. Barg. Reqs.* (March 27, 2025).[3] This, of course, begs the question of why Subchapter X of the FSA "cannot be applied" to those involved in trade issues "in a manner consistent with national security requirements and considerations." But USAID is not engaged in trade issues, and trade matters at the Department of State are handled by the Division for Trade Policy and Negotiations,[4] which is just one division within the Bureau of Economic and Business Affairs,[5] which is just one of several

---

[3] The Fact Sheet is available at https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-exempts-agencies-with-national-security-missions-from-federal-collective-bargaining-requirements/ (last visited Apr. 29, 2025).
[4] *See Division for Trade Policy and Negotiations*, U.S. Dep't of State, https://www.state.gov/bureaus-offices/under-secretary-for-economic-growth-energy-and-the-environment/bureau-of-economic-and-business-affairs/division-for-trade-policy-and-negotiations/ (last visited Apr. 30, 2025).
[5] *See Bureau of Economic and Business Affairs*, U.S. Dep't of State, https://www.state.gov/bureaus-offices/under-secretary-for-economic-growth-energy-and-the-environment/bureau-of-economic-and-business-affairs/ (last visited Apr. 30, 2025).

Bureaus within the Economic Growth, Energy and Environment subdivision,[6] which itself is just one of ten subdivisions in the State Department that were excluded from coverage of Subchapter X by Section 3 of the Executive Order. If the President had a *bona fide* belief that Subchapter X could not be applied consistent with national security to those members of the Foreign Service who are involved in trade policy, he could have simply excluded the Division for Trade Policy and Negotiations rather than the entirety of the Department of State.

The only justification given in the Fact Sheet for why collective bargaining at certain agencies is inconsistent with national security requirements reveals the President's fundamental misunderstanding, if not misrepresentation of, both the FSA and the Federal Service Labor-Management Relations Statutes and further demonstrate that "the President was indifferent to the purposes and requirements of the Act, or acted deliberately in contravention of them." Neither statute allows "Federal unions to obstruct agency management," as the Fact Sheet claims. Nor is it correct to say that because "Agencies cannot make most contractually permissible changes until after finishing 'mid-term' union bargaining," collective bargaining is "dangerous in agencies with national security responsibilities." Nor is it true that either statute precludes the agencies from "execut[ing] their missions without delay." *First*, both statutes have an expansive management rights clause that protects management prerogatives and precludes bargaining over a host of issues, not the least of which includes the right "to determine the mission, budget, organization, number of employees, and internal security practices of the agency," to "assign work," and, importantly, "to take whatever actions may be necessary to carry out the agency mission during emergencies." 22 U.S.C. § 4105(a); 5 U.S.C. § 7106(a). As a result, although unions may bargain only over the

---

[6] *See Under Secretary for Economic Growth, Energy, and the Environment*, U.S. Dep't of State, https://www.state.gov/bureaus-offices/under-secretary-for-economic-growth-energy-and-the-environment/ (last visited Apr. 30, 2025).

"procedures" that the agency will use in exercising its management rights and over "appropriate arrangements for employees adversely affected by the exercise" of those management rights, they cannot bargain over the substance of the decision itself. *Second*, an agency need not complete bargaining before changing conditions of employment when immediate implementation is "consistent with the necessary functioning of the agency, such that a delay in implementation would have impeded the agency's ability to effectively and efficiently carry out its mission." *SPORT and Dep't of Air Force, Edwards AFB*, 68 F.L.R.A. 9, 10-11 (2014), *recon. denied*, 68 F.L.R.A. 107 (2014) (agency properly furloughed employees without completing implementation bargaining).[7] *Third*, even when an agency is found to have committed an unfair labor practice by failing to bargain over the impact and implementation of a change before it is made, the FLRA may forgo ordering the agency to restore the *status quo ante* as a remedy if it would disrupt and impair the efficiency and effectiveness of an agency's operations. *Dep't of the Air Force, 913th Air Wing, Willow Grove Air Reserve Station*, 57 F.L.R.A. 852, 858 (2002).

Thus, the President did not cite a facially legitimate and *bona fide* reason for invoking the national security exemption. Instead, the Fact Sheet unabashedly discloses the real reason the President issued the Executive Order: The President wants to disempower those unions (like AFSA) that have opposed his policies, and to protect those unions who have not:

- The Fact Sheet calls out "hostile Federal unions" who ostensibly "obstruct agency management."

- "Certain Federal unions have declared war on President Trump's agenda."

---

[7] The Foreign Service Labor Relations Board must follow FLRA precedent unless it determines special circumstances require otherwise. 22 U.S.C. § 4107(b).

- "President Trump refuses to let union obstruction interfere with his efforts to protect Americans and our national interests."

- "President Trump supports constructive partnerships with unions who work with him; he will not tolerate mass obstruction that jeopardizes his ability to manage agencies with vital national security concerns."

In other words, national security equals fealty to the President and to his (unidentified) agenda. Or, in words attributed to Louis XIV, "L'Etat, c'est Moi."[8]

In issuing a temporary restraining order against application of another Executive Order against a prominent law firm, the words of Judge Leon are equally applicable here: "The retaliatory nature of the Executive Order at issue here is clear from its face . . . but also from the Fact Sheet published the same day." *Wilmer, Cutler, Pickering, Hale and Dorr LLP v. Exec. Office of the Pres.*, No. 25-cv-917, 2025 WL 946979, at *1 (March 28, 2025). And, like the Administration's ban on transgender troops, Exec. Order No. 14,251 and accompanying Fact Sheet are "soaked in animus and dripping with pretext." *Talbott v. United States*, No. 25-cv-420, 2025 WL 842332, at *31 (D.D.C. Mar. 18, 2025) (declining to defer to military judgment).

The President's retaliation buttresses two of AFSA's claims. It not only rebuts the presumption of regularity and demonstrates that "the President was indifferent to the purposes and requirements of the Act, [and] acted deliberately in contravention of them," but also demonstrates that the President violated AFSA's First Amendment right to speak (on CNN *The Lead with Jake Tapper*, PBS *News Hour*, CBS *60 Minutes*, Canadian Broadcasting, and elsewhere) and to petition

---

[8] If there is any doubt that the President seeks the personal fealty of the Foreign Service, see Exec. Order No. 14,211, *One Voice for America's Foreign Relations*, 90 Fed. Reg. 9831 (Feb. 12, 2025), in which the President directed the Secretary of State to "reform the Foreign Service and the administration of foreign relations to ensure faithful and effective implementation of the President's foreign policy agenda."

the government for redress of grievances, in the form of the lawsuits it has brought to stop the dismantlement of USAID in *AFSA v. Trump*, No. 1:25-cv-352(CJN) and the U.S. Agency for Global Media in *Widakuswara v. Lake*, No. 1:25-cv-1015 (RCL).[9] Again, as Judge Leon explained in *Wilmer Cutler*, "[t]here is no doubt this retaliatory action chills speech and legal advocacy, or that it qualifies as a constitutional harm." 2025 WL 946979, at *1

But not only is the Executive Order retaliatory, it is coercive because it makes clear that those unions who support the President and his policies – those "unions who work with him" and not against him - can continue their "partnership" and recognition under the labor statutes. That is why U. S. Customs and Border Protection and "any agency police officers" have not been included in the exemptions.[10] In section 4 of the Executive Order, the President delegated to the Secretary of Veterans Administration authority to amend the order to restore collective bargaining rights to subdivisions of the VA. On April 17, Secretary Collins restored collective bargaining rights, not to particular subdivisions, *but to particular unions* in his Department. 90 Fed. Reg. 16427 (Apr. 17, 2025). A spokesperson for the Department explained that bargaining rights were restored to these unions, not because continued bargaining in their organizational subdivisions "consistent with national security requirements and considerations," but because these unions were compliant:

> "The unions in the exempted units have posed no or minimal hinderance to VA operations," he said. "They have filed no or few grievances against VA and they have not proved an impediment to the department's ability to effectively carry out

---

[9] On April 22, Judge Lamberth issued a preliminary injunction reinstating USAGM employees and restoring Voice of America programming. 2025 WL 1166400. In so doing, the Court rejected the government's claims that it lacked jurisdiction because of the ostensible exclusivity of the FSA and CSRA. *Id.* at *9-*11.

[10] The National Border Patrol Council is the exclusive representative of approximately 18,000 Border Patrol agents and support personnel assigned to the U.S. Border Patrol. *About NBPC*, NBPC, https://bpunion.org/about-nbpc/ (last visited Apr. 30, 2024). It endorsed President Trump for election in 2024 (as it did in 2020 and 2016). *See National Border Patrol Council Endorses Trump at Arizona Rally*, THE HILL, (Oct 14, 2024) https://thehill.com/latino/4932425-trump-border-patrol-union-endorsement/. *See also* Pl.'s Mem. (ECF No. 10-1) at 30 n.4.

its mission . . . AFGE, NAGE, NNU and SEIU by contrast are using their authority under the Federal Service Labor-Management Relations Statute to broadly frustrate the administration's ability to manage the agency."

Erich Wagner, *VA is selectively enforcing Trump's order stripping workers of union rights*, GOVERNMENT EXECUTIVE (April 18, 2025) (https://www.govexec.com/workforce/2025 /04/va-selectively-enforcing-trumps-order-stripping-workers-union-rights/404694/, last visited April 25, 2025). "At the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society." *Nat'l Rifle Assn. of Am. v. Vullo*, 602 U.S. 175, 187 (2024). "A government official can share [his] views freely and criticize particular beliefs, and [he] can do so forcefully in the hopes of persuading others to follow [his] lead . . . What [he] cannot do, however, is use the power of the State to punish or suppress disfavored expression" as the President has done here. *Id*. at 188.

## II.    AFSA has proven that the Defendants are currently inflicting harms that will become irreparable absent a preliminary injunction.

Federal courts have repeatedly found that employers' refusal to recognize or their withdrawal of union recognition, along with the repudiation of collective bargaining agreements, causes irreparable harm to unions and the employees they represent. *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1191 (9th Cir. 2011); *NLRB v. Electro-Voice*, 83 F.3d 1559, 1573 (7th Cir. 1996); *Asseo v. Centro Medico del Turabo*, 900 F.2d 445, 455 (1st Cir. 1990); *SEIU Health Care Mich. v. Snyder*, 875 F. Supp. 2d 710, 723-24 (E.D. Mich. 2012) ("*Snyder*"). The Defendants argue that AFSA "overstates" these harms, (Defs.' Opp. (ECF No. 23) at 13-14), cherry-picking one of the foregoing cases – *Electro-Voice* – to argue that it involved a claim for the unlawful suppression of a unionization effort that was proceeding through the National Labor Relations Board's process, which could take "years." *Id.* (citing *Electro-Voice*, 83 F.3d at 1573).

The Defendants ignored or overlooked the other cases cited by AFSA, such as *Snyder*, that involved the termination of an existing collective bargaining relationship.  In *Snyder*, the State of Michigan adopted a law that amended the definition of "public employee" for purposes of the state labor-management statute to exclude workers who were employed by a private entity that received state funds. *Snyder*, 875 F. Supp. 2d at 716-17. The state's attorney general issued an opinion letter that determined the law was to take immediate effect, despite the existence of collective bargaining agreements that covered the home healthcare workers. *Id.* at 717. The result would be the withdrawal of recognition of the union as the employees' representative, the repudiation of the collective bargaining agreements and the cessation of dues deduction. The workers' union filed a lawsuit seeking, among other things, preliminary injunctive relief. The court found that the exclusion of the union-represented employees from the state labor-management relations statute would inflict irreparable injury.  *Snyder*, 875 F. Supp. 2d at 724-25. As the court explained:

> By mandating that state officials refuse to recognize Plaintiff as a union representative and refuse to withhold union dues and fees, Plaintiff will be irreparably harmed by being deprived of its contractual rights, its ability to advocate and bargain for its members, and the loss of revenue to operate effectively and exercise its First Amendment rights during an important time before a new budget is passed and an election is held.

*Id.* at 725. *See also Donohue v. Mangano*, 886 F. Supp. 2d 126, 152-53 (E.D.N.Y. 2012) (finding irreparable harm where law renders public employee union "futile and ineffective" and unable to "represent their members in any meaningful way").

The process by which irreparable harm develops was expounded upon by another court:

> The bargaining process is harmed when an employer's actions weaken a union, and that union's ability to provide effective representation is diminished. If the union cannot negotiate for better terms and conditions of employment, the interest of the employees in representation will dissipate. The impotence of the union and the loss of employee interest can create a mutually reinforcing cycle, as lack of support among employees further diminishes the union's strength and, consequently, its

17

ability to press for improvements that would demonstrate its worthiness to members of the bargaining unit.

*Moore-Duncan ex rel. NLRB v. Horizon House Developmental Svcs.*, 155 F. Supp. 2d 390, 396-97 (E.D. Pa. 2001) ("*Horizon House*"). The Defendants already initiated that "mutually reinforcing cycle" at State and USAID. *Horizon House*, 155 F. Supp. 2d at 396-97. AFSA explained in its Memorandum in Support of the Motion for a Preliminary Injunction, along with the supporting declarations, how both State and USAID have weakened AFSA's ability to represent Foreign Service employees. Pl.'s Mem. (ECF No. 10-1) at 16-20.[11] They have ceased all communications and meetings with union representatives about Foreign Service members' employment conditions (ECF No. 10-2, Yazdgerdi Decl. ¶ 10; ECF No. 10-3, Wong Decl. ¶¶ 8, 12; ECF No. 10-4, Chester Decl. ¶¶ 9, 19); eliminated the ability of AFSA's officers to represent employees during work hours (ECF No. 10-3, Wong Decl. ¶ 20; ECF No. 10-4, Chester Decl. ¶ 15; ECF No. 10-5, Sigfusson Decl. ¶¶ 14, 15); limited AFSA's involvement before the Foreign Service Grievance Board (ECF No. 10-6, Parikh Decl. ¶ 6; ECF No. 10-7, Papp Decl. ¶ 3, Exs. 1 & 2); excluded AFSA representatives from their offices, limiting AFSA's access to members and collective bargaining records (ECF No. 10-5, Sigfusson Decl. ¶¶ 11, 12); and terminated dues deduction (ECF No. 10-2, Yazdgerdi Decl. ¶ 10). These actions unfolded *while AFSA was performing representative duties*, such as trying to finalize promotion procedural precepts at State (Wong Decl. ¶14) or bargain over

---

[11]    The Defendants' claim that AFSA's argument with respect to USAID "is even more convoluted." Defs.' Opp. (ECF No. 23) at 13. The only reason for such confusion lies with the fact that, unlike State, USAID has not sent a communication expressly withdrawing recognition of AFSA and terminating the collective bargaining agreements. Any doubts are quickly dispersed by the plain words of Exec. Order No. 14,251, which removes all of USAID from the coverage of the FSLMRS, and the Guidance of OPM, which explains that the removal results in AFSA losing its status as the exclusive bargaining representative. OPM, *Guidance on Exec. Order Exclusions from Fed. Labor-Mgmt. Programs*, *available at* https://www.chcoc.gov/content/guidance-executive-order-exclusions-federal-labor-management-programs (last visited Apr. 30, 2025), at 3.

a range of matters at USAID (ECF No. 10-4, Chester Decl. ¶ 19). The Defendants' actions have caused anxiety and fear in Foreign Service members about whether AFSA can continue to represent them (ECF No. 10-6, Parikh Decl. ¶¶ 5, 7), and even led some members to cancel their dues out of the mistaken belief that the Executive Order made it "illegal" for them to be an AFSA member (ECF No. 10-2, Yazgerdi Decl. ¶ 18.)

Given these increasingly irreparable harms, AFSA filed a motion for a preliminary injunction, which is the *only* reason why, using the Defendants' words, "[t]hese proceedings … are moving with dispatch…." Defs.' Opp. (ECF No. 23) at 14. Otherwise, AFSA may have to wait years for a final resolution of its claims. According to the Administrative Office of the U.S. Federal Courts, the median time from filing in U.S. District Court for the District of Columbia to a final decision by the U.S. Court of Appeals for the D.C. Circuit is 33 months or nearly 3 years.[12] *See* Admin. Office of U.S. Fed. Courts, Table B-4A, U.S. Courts of Appeal, Jud. Bus. at 2 (Sep. 30, 2024), second page "Other Civil Appeals," row "DC," and column "filing in lower court to last opinion or final order in appellate court," *available at* https://www.uscourts.gov/data-news/data-tables/2024/09/30/judicial-business/b-4a (last visited Apr. 26, 2025).

While this case winds its way through the judicial system, the Defendants are accelerating the "mutually reinforcing cycle," *Horizon House*, *supra*, to further undermine AFSA's ability to represent Foreign Service members. Defendant Marco Rubio announced on April 22, 2025 that

---

[12] AFSA uses the time between the filing of an action in district court and the final decision by the appellate court because, as recent history shows, the government seeks emergency stays from the D.C. Circuit of adverse district court decisions while appealing the lower courts' decisions. *See, e.g.*, *Harris v. Bessent*, No. 25-5037, 2025 WL 980278 (D.C. Cir. Mar. 28, 2025) ("ORDERED that the emergency motions for stay be granted"), *vacated on reconsideration en banc*, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025) (en banc). Notably, after the full appellate court's vacatur of the panel's emergency stay, the government sought and received an emergency stay from the Supreme Court. *Trump v. Wilcox*, No. 24A966, 2025 WL 1063917 (U.S. Apr. 9, 2025).

19

Defendant State will reorganize itself by decreasing the number of bureaus or offices from 734 to 632 and downsizing of the domestic staff by fifteen percent (15%). ECF No. 24-1, Supplemental Declaration of Thomas Yazdgerdi[13] ¶¶ 2-3, Exs. 1 (Email Announcement), 2 (Fact Sheet) & 3 (FAQ). Foreign Service members who remain employed "may have to rebid for [their] onward assignment depending upon the reorganization plan submitted by [their] Under Secretary." *Id.*, Ex. 3 (FAQ) at 4. That very bidding process was the subject of negotiated agreements between State and AFSA. (ECF No. 10-2, Yazdgerdi Decl. ¶ 15.) Foreign Service members will have to navigate that process without their bargained-upon frameworks and without their collective bargaining representative. AFSA's inability to represent Foreign Service members during the reorganization and re-bidding process will further erode the employees' confidence and trust in the collective bargaining process and their bargaining representative. *Horizon House*, 155 F. Supp. 2d at 396-97.

The Defendants dismiss the loss of these bargained-for frameworks as "hyperbole," arguing that the frameworks are reflected in the Foreign Affairs Manual. Defs.' Opp. (ECF No. 23) at 13. Yet, in the same paragraph, the Defendants note that President Trump issued Executive Order No. 14,211, 90 Fed. Reg. 9,831 (Feb. 18, 2025) in which he directed Defendant Secretary Rubio "to revise or replace the Foreign Affairs Manual." Defs.' Opp. at 13. While the Defendants contend that AFSA "has made no showing that any wholesale changes to the Manual are imminent," they miss the point. AFSA has proven that, *when* the changes come, Foreign Service members will have no voice in the matter because AFSA's status as their collective bargaining representative has been wrongfully taken away from them. AFSA will have been denied the opportunity to represent

---

[13] AFSA has filed a Motion for Leave to File Supplemental Declaration of Thomas Yazdgerdi (ECF No. 24), for the purpose of introducing facts that occurred *after* AFSA filed its motion for preliminary injunction. The Supplemental Declaration and accompanying exhibits can be found at ECF No. 24-1.

Foreign Service members as State (and USAID) make changes to their employment conditions, including changes to "assignment procedures, tenure and promotion, grievance procedures, time-in-class and time-in service rules, and disciplinary procedures…." *Id.* The employees lose faith in the collective bargaining process and AFSA loses the support of the employees. *Snyder*, 875 F. Supp. 2d at 724-25; *Horizon House*, 155 F. Supp. 2d at 396-97.

The loss of employees' support will inevitably result in a sustained economic loss to AFSA of a degree that transcends the "black letter law" cited by the Defendants in their opposition. Defs.' Opp. (ECF No. 23) at 11 (quoting *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 50 (D.D.C. 2011)). The Defendants dismiss AFSA's arguments as "entirely speculative," even though they filed their opposition on the same day that the largest federal employee union announced that it was laying off half of its staff because of the President's executive actions, including Executive Order No. 14,251.[14] The Defendants' termination of dues deduction, which they describe as a mere "procedural move" (Defs.' Opp. (ECF No. 23) at 11), requires AFSA, with its 40 staff members (ECF No. 10-5, Sigfusson Decl. ¶ 7), to reach out to 13,478 dues-paying members (ECF No. 10-2, Yazgerdi Decl. ¶ 3) while losing an estimated $360,000 to $389,000 – or 86% of its operational revenue – each month (*id.*, Yazdgerdi Decl. ¶ 17).[15] These facts give rise to "crippling losses" that threaten AFSA's existence. *Wilmer Cutler, supra.* at *1.

---

[14]  Ryan J. Foley, *Largest Fed. Emp. Union, a Leading Trump Opponent, to Lay Off More than Half of Staff*, Assoc. Press (Apr. 25, 2025), *available at:* https://apnews.com/article/afge-federal-union-trump-cuts-layoffs-downsizing-53c0a1491cc5af65278fbd16b8cfb6b5 (last visited Apr. 26, 2025).

[15]  The Defendants assert that AFSA has failed to demonstrate that its members – whose union membership is entirely voluntary – will cease paying dues in the wake of Executive Order 14,251. ECF No. 23, Defs.' Opp. at 11. The Defendants admittedly ceased the payment of dues by ceasing the deduction of dues. *Id.* Members must arrange to *continue* to pay dues. AFSA has proven (a) members are questioning whether AFSA can still represent them (ECF No. 10-6, Parikh Decl. ¶¶ 5, 7), and (b) led some members to cancel their dues because they thought it was "illegal" for them to be an AFSA member (Yazgerdi Decl. ¶ 18.)

In summary, AFSA has demonstrated immeasurable and irreparable harms to the rights of Foreign Service members to organize and bargain collectively, as well as to itself as the exclusive bargaining representative. Courts recognize that they cannot remedy these losses. *Avanti Health Sys., LLC*, 661 F.3d at 1192 (finding future order cannot remedy diminished level of support); *Centro Medico del Turabo*, 900 F.2d at 454 (finding future order will become effective with loss of employee support). Meanwhile, the Defendants will have "reap[ed] the benefits of allegedly illegal conduct even if [they] eventually lose[] on the merits." *International Union of Elec., Radio & Mach. Workers v. NLRB*, 426 F.2d 1243, 1249 (D.C. Cir. 1970). Such harm can only be redressed by enjoining the wrongful conduct *pendente lite. Glasser v. Heartland Health Care Ctr.*, 333 F. Supp. 2d 607, 615 (E.D. Mich. 2003); *Horizon House*, 155 F. Supp. 2d at 396-97.

Finally, the Defendants rely on *Nat'l Treas. Emps. Union v. Reagan*, 1981 WL 150530 (D.D.C. Sep. 3, 1981) to argue that "courts have uniformly rejected First Amendment challenges to Presidents' executive orders issued under 5 U.S.C. § 7103(b)(1) – a provision similar to 22 U.S.C. § 4103(b) – denying segments of the Federal government collective bargaining rights." Defs.' Opp. (ECF No. 23) at 15. Neither President Carter nor President Reagan voiced the vitriol of President Trump when they issued or defended Executive Order No. 12,171. There was no allegation that the exclusions at issue in that case were made in retaliation for exercising the right to speak or petition. Thus, the court did not address whether those rights have been irreparably harmed when the President retaliates against the exercise of such rights by taking away employees' statutory rights to organize and bargain collectively. The current President openly admitted to such retaliation. The irreparable harm to the exercise of First Amendment rights is present in this case because of the ongoing chilling effect of the President's conduct.

III.    **The Balance of Equities and Public Interest Still Favor an Injunction.**

The Defendants contend that a preliminary injunction should not issue because the remaining factors, *i.e.*, the balance of equities and the public interest, weigh in their favor. *See* Defs.' Opp. (ECF No. 23) at 39-40. However, the Defendants do not identify any harm that they would suffer if enjoined, thereby leaving the balance of equities weighing strongly in favor of AFSA. *Doe v. McAleenan*, 415 F. Supp. 3d 971, 979 (D.D.C. 2019) (noting defendants' invocation of national security, and their failure to show how it was threatened, finding balance of equities favored issuance of temporary restraining order).

Instead, the Defendants focus on the public interest factor. Defs.' Opp. (ECF No. 23) at 39-40. They argue that the President has determined that collective bargaining in the Foreign Service at State and USAID is incompatible with national security and that this decision is entitled to deference because the public interest lies with ensuring agencies that have a primary national security function operate effectively and responsively for the American people. *Id.* Yet, "[t]o deny inquiry into the President's power in a case like this, because of the damage to the public interest to be feared from upsetting its exercise by him, would in effect always preclude inquiry into the challenged power, which presumably only avowed great public interest brings into action." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 596 (1952) (Frankfurter, J. concurring). "Presidential claim to a power at once so conclusive and preclusive must be scrutinized with caution, for what is at stake is the equilibrium established by our constitutional system." *Youngstown Sheet & Tube Co.*, 343 U.S. at 638 (Jackson, J. concurring).

Thus, the public interest is not served if the Judicial Branch simply bows in deference whenever the Executive Branch invokes "national security." Rather, it requires vigilance on the judiciary's part to ensure that the executive acts in accordance with the Constitution and federal

23

law. "History abundantly documents the tendency of the Government – however, benevolent and benign its motives – to view with suspicion those who most fervently dispute its policies…" *Mitchell v. Forsyth*, 472 U.S. 511, 523 (1985) (quoting *United States v. U.S. Dist. Ct. for the E.D. Mich.*, 407 U.S. 297, 314 (1972)). That suspicion leads the Government (*i.e.*, the Executive Branch) to act against dissenters by invoking "vague concepts" like "domestic security" or "national security." *Id.* As detailed throughout the Plaintiff's Memorandum in Support and this Reply Brief, President Trump has expressed more than mere "suspicion" toward the Federal employee unions who have challenged the Administration's policies that affect their employment conditions. The President declared his outright hostility towards those unions for their representation of federal employees, including AFSA's representation of Foreign Service members, which serves as the motivating factor for his invocation of Section 4103(b).

In any event, the President's powers are not as clear-cut as the Defendants suggest. The D.C. Circuit has recognized that, "the Constitution is largely silent on the question of allocation of powers associated with foreign affairs and national security." *United States v. Am. Tele. & Tele. Co.*, 567 F.2d 121, 128 (D.C. Cir. 1977). Ordinarily, "[t]hese powers have been viewed as failing within a zone of twilight, in which the President and Congress share authority or in which its distribution is uncertain." *Id.* at 128. Yet, Congress pierced this twilight in 1980 when it enacted the FSA. It conferred the rights to organize and bargain collectively upon Foreign Service members, as well as their union. Congress did so because, as it recounts in the very first section of Subchapter X, history has shown that these rights "safeguard the public interest" and contribute to the "effective conduct of public business." 22 U.S.C. § 4101. That framework has worked successfully in both times of war and peace until the abrupt change by this President on March 27, 2025.

Although Congress included Section 4103(b) in the FSA, the public interest lies in preventing the Executive Branch's overzealous, retaliatory efforts to exploit that narrow exception to undermine the Congress' carefully crafted framework. The Constitution empowers the President to execute the laws faithfully, which by definition excludes the power to enact or repeal legislation, directly or indirectly. *Youngstown Sheet & Tube Co.*, 343 U.S. at 587. If the President could effectively repeal duly-enacted legislation by misuse and a misreading of Section 4103, "no barrier would remain to the executive ignoring any and all Congressional authorizations if he deemed them, no matter how conscientiously, to be contrary to the needs of the nation." *Local 2677, Am. Fed'n of Gov't Emps. v. Phillips*, 358 F. Supp. 60, 77 (D.D.C. 1973). Such an outcome "would undermine public confidence in the very edifice of government as it is known under the Constitution." *Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 569, 577 (D.D.C. 1952), *aff'd*, 343 U.S. 579 (1952). For these reasons, the issuance of a preliminary injunction serves the public interest.

## CONCLUSION

For the foregoing reasons and those set forth in AFSA's Memorandum in Support of its Motion for Preliminary Injunction, the March 27 Executive Order constitutes unlawful action that is *ultra vires*. AFSA respectfully request that the Court enter a preliminary injunction with respect to the implementation and enforcement of the Executive Order.

DATED: April 30, 2025

Respectfully submitted,

*/s/ Richard J. Hirn*

By: _____

RICHARD J. HIRN
D.C. Bar No. 291849
5335 Wisconsin Ave., NW, Suite 440
Washington, D.C. 20015
(202) 274-1812

richard@hirnlaw.com

KEITH R. BOLEK
D.C. Bar No. 463129
APRIL H. PULLIUM
D.C. Bar No. 198026
O'Donoghue & O'Donoghue LLP
5301 Wisconsin Avenue, Suite 800
Washington, D.C. 20015
(202) 362-0041
kbolek@odonoghuelaw.com
apullium@odonoghuelaw.com

SHARON L. PAPP*
General Counsel
D.C. Bar No. 107992
RAEKA SAFAI*
Deputy General Counsel
D.C. Bar No. 977301
American Foreign Service Association
2101 E Street, NW
Washington, DC 20037
(202) 338-4045
papp@afsa.org
safai@afsa.org

*Admissions pending

26

# Exhibit A



UNITED STATES OF AMERICA
**FEDERAL LABOR RELATIONS AUTHORITY**
**CHICAGO REGIONAL OFFICE**
224 S. Michigan Avenue, Suite 445 ● Chicago, Illinois 60604-2505
(872) 627-0020; FAX: (312) 281-6500

April 9, 2025

**VIA EMAIL**

███████████

Associate General Counsel
Employment and Labor Law Division
Office of the General Counsel
DoD Education Activity
4800 Mark Center Drive, 04D14-03
Alexandria, VA  22350-1400
██████████@dodea.edu

Richard Hirn, Attorney
Richard J. Hirn Attorney at Law
5335 Wisconsin Ave NW
Washington, D.C. 20015
richard@hirnlaw.com

Re:    CH-CA-25-0105: Depart of Defense
Eduaction Activity, Alexandria, Virginia and
Antilles Consolidated Eduation Association

Dear Parties:

This Office docketed the above-captioned unfair labor  ractice  ULP  charge on January 21,
2025. The A ent assi ned to investigate this char e is ███████████, who can be reached via
phone at ███████ or via email at ███████████.

On March 27, 2025, President Trump issued an Executive Order titled *Exclusions from Federal
Labor-Management Relations Programs*, which amended Executive Order 12171, dated
November 19, 1979 (as amended), and excluded a number of Federal agencies from collective
bargaining pursuant to Section 7103(b)(1) of the Federal Service Labor-Management Relations
Statute (Statute).

Because the Executive Order impacts the processing of this ULP charge, processing of this
charge will be deferred so as to afford the Office of the General Counsel time to reevaluate the
case in view of the Executive Order and in view of cases pending before the Authority.

Sincerely,

*/Timothy Sullivan/*

Timothy Sullivan
Acting Regional Director

# Exhibit B

**FEDERAL LABOR RELATIONS AUTHORITY**
**WASHINGTON, D.C.**

————

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**(Agency)**

**and**

**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES**
**COUNCIL 238**
**(Union)**

**0-AR-6001**

———

**ORDER TO SHOW CAUSE**

**April 4, 2025**

————

On March 27, 2025, President Donald J. Trump amended Executive Order 12,171 (1979), pursuant to 5 U.S.C. § 7103(b)(1) and 22 U.S.C. § 4103(b), to exclude certain agencies and agency subdivisions from the coverage of the Federal Service Labor-Management Relations Statute (the Statute).[1]  Accordingly, the Authority directs the Agency to show cause why the Authority should not dismiss this matter for lack of jurisdiction.[2]  As described further below, the Union may reply to the Agency's response to this order.

The Agency must file its response to this order with the Authority by **April 18, 2025**.  The Agency's response must also include a statement of service that complies with the Authority's Regulations showing that the Agency served its response on all counsel of record or other designated representatives.[3]

The Agency should direct its response to Erica Balkum, Chief, Office of Case Intake and Publication, Federal Labor Relations Authority, 1400 K Street NW, Suite 300, Washington, D.C. 20424-0001.  The proper methods for filing documents with the Authority are set forth at § 2429.24(e) of the Authority's Regulations.[4]  As outlined in the

---

[1] Exclusions from Federal Labor-Management Relations Programs, Exec. Order No. 14251 (Mar. 27, 2025), 90 Fed. Reg. 14553 (Apr. 3, 2025).
[2] *See generally U.S. Att'y's Off., S. Dist. of Tex., Hous., Tex.*, 57 FLRA 750 (2002) (where President amended Executive Order 12,171 to exclude additional entity from Statute's coverage, Authority ordered affected parties to brief whether Authority lacked jurisdiction over their cases).
[3] 5 C.F.R. § 2429.27(a), (c).
[4] *Id.* § 2429.24(e).

Authority's Regulations, the Agency's response to the Authority must be filed by personal delivery, commercial delivery, first-class mail, or certified mail.[5]

The Agency's failure to comply with this order by **<u>April 18, 2025</u>**, may result in dismissal of the Agency's filing in this case.

If the Union chooses to file a reply to the Agency's response, then the reply must be filed with the Authority within *fourteen days* after service of the Agency's response. The Union's reply must also be filed in accordance with the Authority's Regulations, including the requirement to file a statement of service showing that the Union served its reply on all counsel of record or other designated representatives.[6]

Requests for extensions of time must be in writing and received by the Authority not later than five days before the established time limit for filing.[7]  The request must state the position of the other party and must be served on the other party.[8]

Because the Authority's jurisdiction over this matter is in question, ***the deadlines for any remaining filings in this case – except for responses or replies to this order – are temporarily suspended***.  Except for responses or replies to this order, you are not required to submit any further filings in this case until the Authority notifies you otherwise.

Procedural questions regarding this case should be directed to the Office of Case Intake and Publication at (771) 444-5805.

For the Authority:

Erica Balkum, Chief
Office of Case Intake and Publication

---

[5] *Id.*; *see also id.* § 2429.24(a) ("To file documents by personal delivery, *you must schedule an appointment at least one business day in advance* by calling [(771) 444-5805]." (emphasis added)).
[6] *Id.* §§ 2429.24(e); 2429.27(a), (c).
[7] *Id.* § 2429.23(a).
[8] *Id.*

2

# Exhibit C

**FEDERAL LABOR RELATIONS AUTHORITY**
**WASHINGTON, D.C.**

———

**DEPARTMENT OF DEFENSE**
**DEPARTMENT OF DEFENSE EDUCATION ACTIVITY**
**DOMESTIC DEPENDENT ELEMENTARY AND SECONDARY SCHOOLS**
**SOUTHEASTERN DISTRICT**
**(Respondent)**

**and**

**NATIONAL EDUCATION ASSOCIATION**
**FEDERAL EDUCATION ASSOCIATION, STATESIDE REGION**
**(Charging Party)**

**AT-CA-21-0324**

———

**ORDER TO SHOW CAUSE**

**April 4, 2025**

———

On March 27, 2025, President Donald J. Trump amended Executive Order 12,171 (1979), pursuant to 5 U.S.C. § 7103(b)(1) and 22 U.S.C. § 4103(b), to exclude certain agencies and agency subdivisions from the coverage of the Federal Service Labor-Management Relations Statute (the Statute).[1] Accordingly, the Authority directs the Charging Party to show cause why the Authority should not dismiss this matter for lack of jurisdiction.[2] As described further below, the Respondent may reply to the Charging Party's response to this order.

The Charging Party must file its response to this order with the Authority by **April 18, 2025**. The Charging Party's response must also include a statement of service that complies with the Authority's Regulations showing that the Charging Party served its response on all counsel of record or other designated representatives.[3]

The Charging Party should direct its response to Erica Balkum, Chief, Office of Case Intake and Publication, Federal Labor Relations Authority, 1400 K Street NW,

---

[1] Exclusions from Federal Labor-Management Relations Programs, Exec. Order No. 14251 (Mar. 27, 2025), 90 Fed. Reg. 14553 (Apr. 3, 2025).
[2] *See generally U.S. Att'y's Off., S. Dist. of Tex., Hous., Tex.*, 57 FLRA 750 (2002) (where President amended Executive Order 12,171 to exclude additional entity from Statute's coverage, Authority ordered affected parties to brief whether Authority lacked jurisdiction over their cases).
[3] 5 C.F.R. § 2429.27(a), (c).

Suite 300, Washington, D.C. 20424-0001.  The proper methods for filing documents with the Authority are set forth at § 2429.24(e) of the Authority's Regulations.[4]  As outlined in the Authority's Regulations, the Charging Party's response to the Authority must be filed by personal delivery, commercial delivery, first-class mail, or certified mail.[5]

The Charging Party's failure to comply with this order by **April 18, 2025**, may result in dismissal of the Charging Party's filing in this case.

If the Respondent chooses to file a reply to the Charging Party's response, then the reply must be filed with the Authority within **fourteen days** after service of the Charging Party's response.  The Respondent's reply must also be filed in accordance with the Authority's Regulations, including the requirement to file a statement of service showing that the Respondent served its reply on all counsel of record or other designated representatives.[6]

Requests for extensions of time must be in writing and received by the Authority not later than five days before the established time limit for filing.[7]  The request must state the position of the other party and must be served on the other party.[8]

Because the Authority's jurisdiction over this matter is in question, ***the deadlines for any remaining filings in this case – except for responses or replies to this order – are temporarily suspended***.  Except for responses or replies to this order, you are not required to submit any further filings in this case until the Authority notifies you otherwise.

Procedural questions regarding this case should be directed to the Office of Case Intake and Publication at (771) 444-5805.

For the Authority:

_____
Erica Balkum, Chief
Office of Case Intake and Publication

---

[4] *Id.* § 2429.24(e).
[5] *Id.*; *see also id.* § 2429.24(a) ("To file documents by personal delivery, *you must schedule an appointment at least one business day in advance* by calling [(771) 444-5805]." (emphasis added)).
[6] *Id.* §§ 2429.24(e); 2429.27(a), (c).
[7] *Id.* § 2429.23(a).
[8] *Id.*