UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FOREIGN SERVICE ASSOCIATION,<br><br>*Plaintiff,*<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>*Defendants.* | Civil Action No. 25-1030 (PLF) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY PENDING APPEAL**

The Association's opposition to the government's motion to stay this Court's preliminary injunction order pending appeal does not negate the government's urgent need for a stay. As an initial matter, it fails to account for the D.C. Circuit's recent decision staying the preliminary injunction that this Court entered in the related case *National Treasury Employees Union v. Trump*, Civ. A. No. 25-0935 (PLF) (D.D.C.). *See Nat'l Treasury Emps. Union v. Trump* ("*NTEU*"), No. 25-5157, 2025 U.S. App. LEXIS 11952 (D.C. Cir. May 16, 2025). The Association also has not meaningfully responded to the other errors that the government has identified to demonstrate the government's likelihood of success on appeal from the preliminary injunction decision. As these errors are fully addressed in the government's prior filings in this matter, the government addresses below only a few points raised in the Association's opposition and otherwise incorporates by reference its opposition to the motion for preliminary injunction (ECF No. 23) and its motion for stay pending appeal (ECF No. 42).[1]

---

[1] The government also has filed an Emergency Motion for an Immediate Administrative Stay and Stay Pending Appeal in the appeal challenging the preliminary injunction. *See American*

**ARGUMENT**

I. **The Association Will Not Suffer Irreparable Injury From A Stay And A Stay Is In The Public Interest.**

The Association barely acknowledges the D.C. Circuit's recent decision in *NTEU*, referencing it only in passing and without making any attempt to account for its holding. Opp'n (ECF No. 43) at 5. As explained in Defendants' motion, *NTEU* establishes that this Court erred in determining that the Association had identified "non-speculative, irreparable harm" to support a broad injunction and that the injunction was in the public interest. Mot. for Stay (ECF No. 42) at 2-3. Effectively ignoring *NTEU*, the Association has offered no response to those arguments.

The Association instead asserts that its alleged harm from the Executive Order results from a "'mutually reinforcing cycle'", whereby the union's inability to bargain on behalf of its members "as changes unfold" leads to "employees' declining interest" in union membership, "weaken[s] the union's strength," and that "[t]he end result of that cycle is irreparable." Opp'n (ECF No. 43) at 10.[2] Such a "speculative chain of possibilities," however, fails to establish imminent, irreparable harm. *See Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 (2013) (a "speculative chain of possibilities does not establish that injury based on potential future [conduct] is certainly impending"); *Cayuga Nation v. Zinke,* 302 F. Supp. 3d 362, 373 (D.D.C. 2018) (alleged injuries that "depend on actions

---

*Foreign Service Association v. Donald Trump, et al.*, Case No. 25-5184 (D.C. Cir.) (Dkt. # 2117275). The D.C. Circuit has directed that the Association file its opposition by 5:00 p.m. on May 29, 2025, and that the government file any reply by 5:00 p.m. on June 2, 2025. *See Order* (Dkt. # 2117324).

2    By this argument, the Association acknowledges that the irreparable harm inquiry is limited to whether the Association itself would be harmed. The Association has brought suit solely on its own behalf and its pleading does not allege harm from the Executive Order to any specific member. *Cf. AFL-CIO v. Dept. of Labor*, No. 25-0339 (JDB), 2025 U.S. Dist. LEXIS 23840, at *8-9 (D.D.C. Feb. 7, 2025) ("more than generalizations about the organization's members" is needed to establish associational standing; "[t]he organization must point to a particular member and establish she would have standing if she were a plaintiff herself"); *see also* Prelim. Inj. Opp'n (ECF No. 23) at ECF pp. 17-18.

that may or may not be taken by . . . non-parties over which this Court does not have control" are not sufficiently "certain" to establish irreparable harm).

First, the Association has failed to point to any evidence in the record establishing that it has lost any members as a result of the Executive Order.  Opp'n (ECF No. 43) at 10-11.  As Defendants' motion explains, the Association's assertions regarding lost membership are speculative and without record support—and the Association fails to meaningfully contest that in its opposition.  Mot. for Stay (ECF No. 42) at 3-4.

Second, the Association likewise offers no record support for its assertion of irreparable harm based on the loss of collective bargaining rights.  Although it asserts that "[w]ithout a duty to bargain, the Defendants are free to change the Foreign Affairs Manual at their discretion," the Association fails to explain how any particular type of change might cause it irreparable harm.  Opp'n (ECF No. 43) at 8.  Simply contending that the Manual might undergo some unspecified change at some unspecified date in the future in a way that might cause the Association some unspecified type of harm is insufficient.

The Association's reliance on a recent internal announcement by the State Department of a planned reorganization also is insufficient to establish irreparable harm.  The cited announcement explains that the reorganization will apply only to domestic offices and "will not affect any overseas embassies, posts, or operations." Deputy Secretary Landau Email (ECF No. 31) at ECF p.5.  Most Foreign Service Officers are stationed overseas but, to the extent they work domestically and are subject to a reduction-in-force in connection with the reorganization, the Department's FAQ states that Foreign Service Officers "may be separated from federal service or may be assigned to a different open global role within the Department." *Id*. at ECF p.13.  Thus, alternatives to separation of the type referenced by the Association (Opp'n (ECF No. 43) at 9) already are contemplated to the extent open positions are available.  It is thus entirely speculative for the

3

Association to contend that a "'mutually reinforcing cycle'" will result from its inability to negotiate over procedures for a reduction-in-force (were one to occur), let alone that such a "cycle" will "end" in irreparable harm to the Association.

Because the alleged harm the Association claims to itself is entirely speculative, and the harm to the government and public is significant, the Court should stay the preliminary injunction pending appeal. *NTEU*, 2025 U.S. App. LEXIS 11952, at *5-6 (holding that the government would be irreparably harmed in the absence of a stay and that a stay is in the public interest).

**II.     The Government is Likely to Succeed on Appeal**

This Court should not have even reviewed this case on the merits because it lacks jurisdiction. The Association may ask the Foreign Service Labor Relations Board to consider the Executive Order's validity. The Association thus was required to proceed through the Foreign Service Act's review scheme, which is "exclusive with respect to claims within its scope." *AFGE v. Trump*, 929 F.3d 748, 755 (D.C. Cir. 2019).

The Association contends that the mandatory review scheme is inapplicable but cites no relevant authority to supports its position. Opp'n (ECF No. 43) at 11-14. Its attempt to distinguish the substantial case authority identified by Defendants (Mot. (ECF No. 42) at 5-6) simply underscores the absence of any authority in the Association's favor. The purported distinctions it advances—including the claimed lack of meaningful judicial review before the Board—are belied by a recent decision in another of the Association's suits against the President under the Foreign Service Act, in which this Court held that the administrative scheme afforded meaningful review. *See Am. Foreign Serv. Ass'n v. Trump*, No. 25-0352 (CJN), 2025 U.S. Dist. LEXIS 31748, at *29-37 (D.D.C. Feb. 21, 2025) (finding jurisdiction lacking in district court over the Association's claims over the alleged "dismantling" of USAID under the *Thunder Basin* factors).

Even assuming jurisdiction was proper, Defendants are likely to succeed on the merits of

4

their appeal. During the hearing on the Association's motion for preliminary injunction, this Court acknowledged that, under Section 4103(b) of the Foreign Service Act, "all" the President "has to do is say I've determined that" the two conditions for exclusion under that section apply "[a]nd if that were the case, then the government's argument and presumption of regularity might carry the day." Tr. (ECF No. 34) at 19. The President did just that in Section 3 of the Executive Order, determining that subdivisions of the Department of State and USAID that employed Foreign Service Officers had as a primary function national security work and that the collective bargaining provisions of the Foreign Service Act could not be applied to those subdivisions in a manner consistent with national security requirements and considerations. Exec. Order No. 14,251, 90 Fed. Reg. 14,553, at § 3 (Mar. 27, 2025). That should have ended the inquiry.

But this Court instead found that the presumption did not "carry the day" based largely on a White House Fact Sheet that discussed the President's determinations under a different section of the Executive Order (Section 2 of the Order) that involved determinations made under a statute applicable to the federal Civil Service, not the Foreign Service. That Fact Sheet did not reference the Association or the President's determinations under Section 4103(b) of the Executive Order and thus could not constitute "clear evidence" to rebut the presumption of regularity afforded to those Presidential determinations. *See Univ. of Cal. Student Ass'n v. Carter*, Civ. A. No. 25-0354 (RDM), 2025 WL 542586, at *6 (D.D.C. Feb. 17, 2025) (applying this presumption in denying a motion for preliminary injunction).

In response, the Association attempts to impute language into the Fact Sheet that is simply not there, speculating that a statement in the Fact sheet that "'[c]ertain Federal unions have declared war on President Trump's agenda'" was referring to the Association. Opp'n (ECF No. 43) at 17. On its face, however, the Fact Sheet is limited to the President's determinations under "authority granted by the Civil Service [Act]," which is inapplicable to the Foreign Service, 5

5

U.S.C. § 7103(a)(2)(B)(iv), and the Fact Sheet also does not reference the Association. *See* The White House, *Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements*, https://perma.cc/Y7HR-4W3H (Mar. 27, 2025). Because the Association serves as a union only for members of the Foreign Service, it is pure conjecture for the Association to attribute any statement in the Fact Sheet to any of its activities. Such speculation is not the stuff of which "clear evidence" is made.

For the same reason, the reference to the State Department in the Fact Sheet highlighted in the Association's opposition—about "how trade policy is a national security tool" (Opp'n (ECF No. 43) at 18-19—relates to the President's determination in Section 2 of the Executive Order to exclude the State Department from coverage of the collective bargaining provisions of the Civil Service Act pursuant to 5 U.S.C. § 7103(b)(1). That has no bearing on the President's distinct determinations under Section 3 of the Executive Order, which were based on 22 U.S.C. § 4103(b) and relate to the Foreign Service.

Further, the statements in the Fact Sheet—even if they could be read as relating to determinations made under Section 4103(b)—are not "clear evidence" of improper motive. Because the observations in the Fact Sheet are at least equally (and indeed more) consistent with the underlying purpose of the national security exclusions in Sections 7103(b)(1) and 4103(b), the Court should not have accepted the Association's contrary inference as plausible, let alone as "clear evidence" sufficient to rebut the presumption of regularity. Mot. (ECF No. 42) at 8. Although the Association offers no specific response to that argument, the Association does support the government's understanding of the purpose of the Section 4103(b) exclusion by emphasizing the extensive management's rights clause in Section 4105(a) of the statute and describing all that management can do without having to collectively bargain. Opp'n (ECF No. 43) at 3-4. Even though management retains the broad rights recognized by the Association, Congress still found it

6

necessary to include in the statute a provision allowing the President to exclude collective bargaining altogether when the President makes the determinations in Section 4103(b). That reflects a recognition by Congress that the collective bargaining rights it was granting to unions—even if already substantially limited by the broad management's rights clause—still could be exercised in a manner that was inconsistent with national security requirements and considerations, thus necessitating the need for an exclusion.

Consistent with that purpose, the Fact Sheet explains that unions have used collective-bargaining and grievance procedures to interfere with the President's efforts to change working conditions and eliminate waste and insularity to meet national-security demands. In the President's judgment, such impediments to the effective and efficient operation of government are inconsistent with national security considerations in the context of the specific agencies (or subdivisions of agencies) designated in the Executive Order. Such observations are not evidence of an improper motive but reflect the very concerns that the exclusions exist to address.

Further, no *ultra vires* action occurred here. Section 4103(b) entrusts the relevant determinations to the President alone, without interference from courts or other actors. The Association's attempt to second guess those determinations (Opp'n (ECF No. 43) at 22) is thus immaterial. Contrary to the Association's argument (*id*. at 22-23), moreover, nothing in Section 4103(b) precludes the President from excluding all subdivisions of the Department of State and USAID from coverage. The statute leaves to the President's discretion the ability to exclude none, some or all such subdivisions from coverage when *in the President's judgment* national security considerations warrant. The only limitation in the statute is the requirement that the President make the two determinations set forth in Section 4103(b) to invoke the exclusion as to a particular subdivision, or all subdivisions when applicable in the President's judgment, which he indisputably has done in Section 3 of the Executive Order.

## CONCLUSION

For all the above reasons, and those set forth in Defendants' motion to stay, Defendants have demonstrated a likelihood of success on appeal with respect to Plaintiff's *ultra vires* claims and that the balance of equities favors a stay. Therefore, this Court should enter a stay pending appeal.

Dated: May 29, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
EMILY M. HALL
SARAH E. WELCH
Counsel to the Assistant Attorney General
Civil Division

ERIC HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

ALEXANDER K. HAAS
Director
JACQUELINE COLEMAN SNEAD
Assistant Branch Director
LISA ZEIDNER MARCUS
Senior Counsel
LYDIA JINES
JEREMY MAURITZEN
Trial Attorneys
U.S. Department of Justice, Civil Division
Federal Programs Branch

JEANINE FERRIS PIRRO
United States Attorney

By:  */s/ Jeremy S. Simon*
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
601 D. Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.simon@usdoj.gov

*Attorneys for the United States of America*