UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN FOREIGN SERVICE ASSOCIATION, ) ) ) ) Plaintiff, ) ) v. ) ) DONALD J. TRUMP et al., ) ) Defendants. ) | Civil Action No. 25-1030 (PLF) |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Stay Pending Appeal ("Mot.") [Dkt. No. 42].[1] On May 14, 2025, the Court granted plaintiff American Foreign Service Association's ("AFSA") motion for a preliminary injunction and enjoined defendants from implementing Section 3 of Executive Order 14251. See Exclusions from Federal Labor-Management Relations Programs, Exec. Order No. 14251, 90 Fed. Reg. 14553 (Mar. 27, 2025); Am. Foreign Serv. Ass'n v. Trump, Civil Action No. 25-1030 (PLF), 2025 WL 1387331 (D.D.C. May 14, 2025) (Opinion); Order [Dkt. No. 36]. That section of the Executive Order excluded numerous subdivisions of the Department of State and the United States Agency for International Development ("USAID") from the Foreign Service Labor-Management Relations Statute. See

---

[1] The papers reviewed by the Court in connection with this matter include: Defendants' Motion to Stay Pending Appeal ("Mot.") [Dkt. No. 42]; Plaintiff's Opposition to Defendants' Motion to Stay Pending Appeal ("Opp.") [Dkt. No. 43]; and Defendants' Reply in Support of Motion to Stay Pending Appeal ("Reply") [Dkt. No. 44].

Am. Foreign Serv. Ass'n v. Trump, 2025 WL 1387331, at *1-4.  The defendants have appealed that order and request that this Court stay its order pending the appeal.

A stay pending appeal is an "extraordinary remedy," Cuomo v. U.S. Nuclear Regul. Comm'n, 772 F.2d 972, 978 (D.C. Cir. 1985) (per curiam), as it "is an intrusion into the ordinary processes of administration and judicial review." Nken v. Holder, 556 U.S. 418, 427 (2009) (citation and internal quotation marks omitted).  In deciding whether to grant a stay pending appeal, the Court must consider four factors:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  Nken v. Holder, 556 U.S. at 434 (cleaned up); see KalshiEX LLC v. Commodity Futures Trading Comm'n, 119 F.4th 58, 63 (D.C. Cir. 2024).  The first two factors "are the most critical." Nken v. Holder, 556 U.S. at 434.

The Court concludes that the defendants have failed to make the requisite showings entitling them to a stay pending appeal.  As to the first factor – likelihood of success on the merits – the defendants essentially make the exact arguments that this Court rejected in its decision granting AFSA's request for a preliminary injunction.  See Mot. at 5-7 (arguing that the Court lacks jurisdiction because "Congress made clear that the Foreign Service Act was the proper channel for the types of claims the Association raises here"); id. at 7-9 (arguing that the Court erred in concluding that the "presumption of regularity" had been rebutted); id. at 9-11 (arguing that the Court erred by "suggesting that the terms 'national security' and 'national security work' in the statute are not sufficiently expansive to encompass the State Department and USAID").  Because each of these arguments was addressed and rejected in this Court's prior

opinion – and because the Court sees little likelihood that the court of appeals will disagree – the Court concludes that the defendants have failed to show a likelihood of success on the merits of their appeal.

As to the second factor – irreparable harm – the defendants rely heavily on the D.C. Circuit's recent order in a related case staying this Court's preliminary injunction issued in that related case. See Mot. at 2-3; Nat'l Treasury Emps. Union v. Trump, No. 25-5157, 2025 WL 1441563, at *1 (D.C. Cir. May 16, 2025) (per curium). In that order, the 2-1 majority reasoned that the Court's similar preliminary injunction that enjoined the defendants from implementing a separate section of Executive Order 14251 – Section 2 – irreparably harmed the government by "transfer[ring] [ ] control[] from the Executive to the Judiciary" in the "national security context." Nat'l Treasury Emps. Union v. Trump, 2025 WL 1441563, at *2.

In view of the panel majority's analysis, the Court concludes that the defendants have made some showing that they will suffer irreparable harm absent a stay. See Mot. at 2-3. This Court notes, however, that the defendants have not shown a particularly high degree of irreparable harm. After all, the Court's preliminary injunction order merely maintains the status quo by preserving the collective bargaining rights for a significant number of federal employees, as prescribed by Congress nearly fifty years ago. Nonetheless, notwithstanding some degree of irreparable harm, the defendants have undoubtedly failed to show that the remaining factors of the inquiry warrant a stay. See Nken v. Holder, 556 U.S. at 434-35.

Turning to the third factor – whether the issuance of a stay will "substantially injure" the other party – AFSA clearly faces immense and irreparable injury if the defendants' motion to stay pending appeal is granted. As the Court explained in its earlier opinion, the injuries to AFSA had begun to materialize even prior to this Court's order based on the

3

defendants' actions which directly violated or ignored important provisions in the collective bargaining agreements. As the Court summarized these actions:

> [T]he State Department and USAID "have ceased all communications and meetings with union representatives about Foreign Service members' employment conditions," see Yazdgerdi Decl. ¶ 10; Wong Decl. ¶¶ 8, 12; Chester Decl. ¶¶ 9, 19, "eliminated the ability of AFSA's officers to represent employees during work hours," see Wong Decl. ¶ 20; Chester Decl. ¶ 15; Sigfusson Decl. ¶¶ 14, 15, "limited AFSA's involvement before the Foreign Service Grievance Board," Parikh Decl. ¶ 6; Papp Decl. ¶ 3, "excluded AFSA representatives from their offices, limiting AFSA's access to members and collective bargaining records," Sigfusson Decl. ¶¶ 11, 12, and "terminated dues deduction." Pl.'s Reply at 18.

See Am. Foreign Serv. Ass'n v. Trump, 2025 WL 1387331, at *13. The Court went on to explain that these actions irreparably harmed AFSA both because they caused a significant loss in AFSA's bargaining power and because they created existential economic loss, including a loss of approximately 86% of AFSA's operating revenue. See Am. Foreign Serv. Ass'n v. Trump, 2025 WL 1387331, at *13-15. These two injuries in tandem "create[d] [ ] serious obstacle[s] for AFSA to accomplish its primary mission of representing its members." See id. at *15 (cleaned up); see also League of Women Voters of United States v. Newby, 838 F.3d 1, 9 (D.C. Cir. 2016) ("[O]bstacles [that] unquestionably make it more difficult for the [plaintiff] to accomplish [its] primary mission . . . provide injury for purposes . . . [of establishing] irreparable harm."). The obstacles to AFSA's representational activity also came "at a critical moment" because the State Department and USAID had begun implementing "large-scale reorganization efforts and reductions-in-force," which further heightened the injury to AFSA. See Am. Foreign Serv. Ass'n v. Trump, 2025 WL 1387331, at *14 (explaining that AFSA's members' confidence in the union would be eroded if they had to "navigate" the reductions-in-force and reorganizations "without their bargained-upon frameworks and without their collective

4

bargaining representative"). Based on the factual record now before this Court, there can be little dispute that "the issuance of the stay will substantially injure" AFSA. See Nken v. Holder, 556 U.S. at 434.

The defendants argue that the D.C. Circuit's order in National Treasury Employees Union requires this Court to conclude that AFSA has not demonstrated irreparable harm. See Reply at 2-3. This argument fails to account for a material difference in the factual record between this case and National Treasury Employees Union. In the Circuit's order granting the government's stay in that case, the panel majority concluded that the government was likely to succeed on the merits of its appeal because the plaintiff had failed to show irreparable harm. See Nat'l Treasury Emps. Union v. Trump, 2025 WL 1441563, at *1. For that conclusion, the majority relied upon a "Frequently Asked Questions" document published by the Chief Human Capital Officers Council that "directed agencies to refrain from terminating collective-bargaining agreements or decertifying bargaining units until after the litigation concludes." See id. at *1. As a result, the panel majority said that the asserted harm to the plaintiff was speculative. See id.; id. at *3 (noting that other parties "will not be harmed by a stay" because of the "the Government's self-imposed restrictions"); see also Nat'l Treasury Emps. Union v. Trump, Civil Action No. 25-0935 (PLF), 2025 WL 1444446, at *1 (D.D.C. May 20, 2025) (discussing the court of appeals order at length).

The problem for the defendants in this case is that the critical piece of evidence – the "Frequently Asked Questions" document – relied on by the panel majority in National Treasury Employees Union does not appear to be applicable to this case. The defendants did not rely on this document in their briefing on AFSA's motion for a preliminary injunction and do not reference the specific "directive" contained in the Frequently Asked

Questions document in the instant motion.  Moreover, even if the defendants abstained from canceling AFSA's collective bargaining agreements pursuant to the Frequently Asked Questions document, the defendants' actions as outlined above cause irreparable harm to AFSA "notwithstanding the lack of the formal cancellation of the collective bargaining agreements."  See Nat'l Treasury Emps. Union v. Trump, Civil Action No. 25-0935 (PLF), 2025 WL 1218044, at *18 (D.D.C. Apr. 28, 2025).  The D.C. Circuit's order in National Treasury Employees Union therefore does not command the conclusion that AFSA is unlikely to suffer irreparable harm.

As to the final factor – the public interest – while "preserving the President's autonomy under a statute that expressly recognizes his national-security expertise is within the public interest," Mot. at 3 (quoting Nat'l Treasury Emps. Union v. Trump, 2025 WL 1441563, at *3), so too are the bargaining rights created by Congress and preserved by this Court's order.  See 22 U.S.C. § 4101 ("[L]abor organizations and collective bargaining in the Service are in the public interest and are consistent with the requirement of an effective and efficient Government.").  Furthermore, the defendants' claim that a stay of the Court's order is necessary to "preserv[e] the President's autonomy" is dubious inasmuch as the defendants have not shown a likelihood of success on the merits of their appeal – that is, they have not shown that the President was in fact acting within the autonomy granted to him under the statute.  See Am. Foreign Serv. Ass'n v. Trump, 2025 WL 1387331, at *15 ("The government's primary argument in response – that '[a] preliminary injunction would displace and frustrate the President's decision about how to best address issues of national security[]' – must be rejected because it 'presuppose[s] that the President's decisions are in fact "national security" determinations, rather than a recasting of decisions related to "the general welfare" as "national security"

6

determinations.'") (internal citations omitted).  The Court therefore concludes that the defendants have failed to show that a stay is in the public interest.  See Nken v. Holder, 556 U.S. at 434.

In sum, while the defendants have shown some risk that they will suffer irreparable harm absent a stay, they have failed to show that any of the other factors warrant a stay.  In light of the foregoing, it is hereby

ORDERED that Defendants' Motion to Stay Pending Appeal [Dkt. No. 42] is DENIED.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 6/17/25